Opinion issued October 20,
2011.

 



In The

Court of
Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-10-01069-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



IN THE INTEREST OF R.R., a child

 

 



On Appeal from the 313th District Court

 Of Harris
County, Texas

Trial Court Cause No. 2010–02684J

 

 



MEMORANDUM OPINION

In this accelerated appeal, a mother
challenges the trial court’s judgment terminating her parental
rights to her child, R.R.  The mother
contends that the trial court erred in: (1) denying her motion for
continuance; (2) admitting exhibits proffered by the Department of Family
and Protective Services (the “Department”); (3) failing to ensure that the
mother received the family service plan in Spanish, her native language; (4) admitting the casework supervisor’s
testimony regarding the child’s medical condition and treatment; (5) deviating
from the “traditional” order of witnesses in trial; (6) failing to appoint an
attorney for the mother before trial; and (7) relying on erroneously submitted
medical evidence in reaching its ruling.  The mother also challenges the legal and
factual sufficiency of the evidence supporting the trial court’s finding that
termination of her parental rights is in R.R.’s best interest.  Finding no error, we affirm.

Background

The mother gave birth to R.R. in 2009.
 When R.R. was five months old, his
mother got a full-time job working as a cook in a meat market.  On her first day of work, she could not find a
babysitter to care for R.R., so the mother left him with his father.  When she returned three hours later, the
mother noticed that R.R. was in distress and that his right leg was swollen.

The mother took R.R. to stay with her
cousin, but did not immediately seek medical treatment for him.  Over the next several days, R.R. had diarrhea
and vomiting and had trouble sleeping.  After
nine days, the mother finally brought R.R. to the doctor, who, after observing
the severity of R.R.’s injuries, referred him to Texas Children’s Hospital, where
he was diagnosed with a broken femur, multiple skull fractures, and a subdural
hematoma. 

The mother first explained that she
did not immediately bring R.R. to the doctor because she thought the swelling
was due to immunizations R.R. had received several weeks earlier.  After learning the extent of R.R.’s injuries, however,
the mother admitted that she had left R.R. alone with his father.  The mother stated that she was afraid of the
father, who was abusive.  She explained
that R.R.’s father had threatened her with knives, attempted to suffocate her
with a pillow, and had also hit her while she was pregnant.  Based on those prior experiences, as well as
her conversations with the father when she saw R.R.’s swollen leg, the mother
believed that the father had injured R.R.  The mother also admitted that she delayed in
bringing R.R. to the hospital because she did not want to answer any questions
about how R.R. came to be injured.

In
R.R.’s hospital records, the attending physician noted that R.R.’s injuries
were consistent with abuse and neglect, that he was in serious danger of
further harm, and that he could have suffered serious injury or death.  To repair the broken femur, R.R. was placed in
a body cast.  To address R.R.’s
developmental delay, which was attributed to the brain injuries, R.R. was
referred to the state’s early childhood intervention program.  

After R.R. was discharged from the
hospital, the mother took him to stay with one of her friends.  A few weeks later, however, the friend told
the mother that she could no longer care for R.R.  The mother then placed R.R. with his father’s
nephew and the nephew’s wife.  

Several days after this second
placement, the mother and her niece brought R.R. to the hospital for a
follow-up appointment.  The examination
revealed that R.R. suffered a new leg fracture since his last visit.  A social worker and Spanish translator were
present during R.R.’s examination.  The
social worker asked questions about the baby’s condition during the past few
days.  The mother’s answers contradicted
those of the niece.  The mother said she
did not notice anything unusual about R.R.’s condition, but the niece responded
that R.R. had been crying and in apparent pain. 
The social worker noted that the mother gave evasive and inconsistent
answers.

Based on the information obtained
during the interview, the circumstances surrounding R.R.’s injuries, the
severity of those injuries, and other pertinent observations, the social worker
opined that R.R. was in substantial risk of future harm and recommended that
the Department take custody of R.R.  When
no other relative came forward to care for R.R., the trial court granted the Department
temporary conservatorship.  

The Department placed R.R. in foster
care and began proceedings to terminate parental rights.  In its petition, the Department declared that
its goal for R.R. was alternative family or non-related adoption.  The Department also prepared a family service plan,
which required the mother and father to maintain contact with the Department,
attend parenting and domestic violence classes, attend court meetings in the
case, undergo psychological evaluation, and comply with other stability
requirements. 

The trial court signed an order
incorporating the family service plan by reference and requiring R.R.’s parents
to comply with the plan.  A CPS caseworker
provided the mother with a copy of the plan written in Spanish, and a court
interpreter explained the plan to the mother in Spanish.  The mother confirmed that she had received
the Spanish copy of the plan and that she understood its purpose and
requirements.  

By the second permanency hearing, the
mother had completed the anger management, domestic violence, and parenting
classes required by the plan, but had not yet submitted to the required psychological
evaluation.  According to CPS program
director Lisa McCartney, the mother did not display any improved understanding of
her parental obligations after completing the coursework.  

The mother appeared in person without
counsel in the pretrial hearings, but no record was made of those proceedings.  On the first day of the trial in November 2010,
however, the mother appeared with counsel and filed a motion for
continuance.  The trial court did not
make a written ruling on that motion, but nevertheless proceeded with trial.  Ultimately, the trial court ordered that the
father’s and mother’s parental rights to R.R. be terminated. 

Discussion

I.       Motion
for Continuance

          A.      Preservation of error

The mother
maintains that the court erred in denying her motion for continuance.  The Department claims that the mother waived
this complaint by failing to obtain a ruling. 
We disagree.  Defense counsel
filed a handwritten motion for continuance along with a proposed order.  In the motion, counsel represented that the
mother was confused about the judicial process and had not prepared a defense,
and that he had been retained the day before and needed additional time to
prepare the case.  Although the trial
court did not sign a written order denying the motion, defense counsel stated
on the record, “Before we get started, I wanted to renew my objection to the
motion for continuance, which was previously denied.”  Before the trial court could rule, the Department
requested that the trial court take notice of documents in its own file showing
when the mother received notice of the trial setting, and the trial court
proceeded with trial.  

Counsel’s objection
could have been clearer, but a fair reading of the record in context shows that
counsel presented specific grounds for his motion for continuance and secured a
ruling on it.  See Tex. R. App. P.
33.1(a)(2)(A) (declaring that appellant presenting complaint for appellate
review preserved same where record shows that specific grounds for motion
apparent from the context, appellant complied with pertinent rule of civil
procedure, and record shows that trial court ruled on motion “either expressly
or implicitly”).

B.      Standard of review

We review the
denial of a motion for continuance for an abuse of discretion.  In re
R.R., 209 S.W.3d 112, 114 (Tex. 2006); Villegas
v. Carter, 711 S.W.2d 624, 626 (Tex. 1986).  A trial court abuses its discretion when it
acts in an arbitrary and unreasonable manner or when it acts without reference
to any guiding rules or principles.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241–42 (Tex. 1985).

Under the
abuse of discretion standard, we view the evidence in the light most favorable
to the trial court’s actions and indulge every presumption in favor of the
judgment.  Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st
Dist.] 1993, writ denied).  If some
probative and substantive evidence supports the order, there is no abuse of
discretion. Whitworth v. Whitworth,
222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  

C.      Analysis

A motion for
continuance may not be granted “except for sufficient cause supported by
affidavit, or by consent of the parties, or by operation of law.”  Tex.
R. Civ. P. 251; O’Connor v.
O’Connor, 245 S.W.3d 511, 516 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).  Lack of counsel, standing alone,
is not good cause for a continuance.  Tex. R. Civ. P. 253; O’Connor, 245 S.W.3d at 516.  The record shows that the mother attended an
August 30, 2010 hearing, during which the court set the November 17, 2010 trial
date.  A month later, the Department
served the mother with written notice of the November trial setting.  Although the motion generally alleges that
the mother was confused about the significance of the proceeding, it does not provide
a reasonable explanation for her delay in seeking assistance or indicate that
she was prevented from obtaining it, either from the Mexican Consulate or an
attorney, until the day before the trial setting.  

Even if we would have decided the issue differently, we cannot
disturb the trial court’s decision unless it is shown to be arbitrary and
unreasonable.  See Walker v. Packer, 827 S.W.2d 833, 839–40 (Tex. 1992).  The trial court did not act unreasonably in
denying the motion for continuance based on the grounds presented.

II.      Evidentiary
complaints

          A.      The Department’s exhibits

          The
mother challenges the trial court’s admission of the Department’s exhibits 1
through 7, namely: 

·                   
the
certificate of paternity registry search showing no man has claimed to be
R.R.’s father (exhibit 1);

 

·                   
the
affidavit of status showing that the mother has identified R.R.’s alleged
father (exhibit 2);

 

·                   
the
family service plan, English and Spanish versions, both unsigned (exhibits 3
and 4);

 

·                   
the
medical records from Texas Children’s Hospital concerning R.R.’s diagnoses and
treatment (exhibit 5);

 

·                   
the
letter from the CPS caseworker to the mother requesting that she contact the caseworker
as soon as possible concerning the November 17 court date, with return receipt
signed by mother on or about October 26, 2010 (exhibit 6); and

 

·                   
the
family service plan (English version), signed by mother on June 10, 2010 (exhibit
7).

The
mother failed to make timely and specific objections to exhibits 1, 2, 6, and
7, and thus waived her challenge to the admissibility of those exhibits.  Objections not made at the trial court but
raised only on appeal present nothing for review.  See
Tex. R. App. P. 33.1; See In re L.M.I., 119 S.W.3d 707, 711
(Tex. 2003).  We consider only those
contentions on appeal that comport with the objections made at trial.  See In
re L.M.I., 199 S.W.3d at 711.

The mother timely objected to exhibits
3, 4, and 5.  We therefore consider the
merits of the objections to admission of the family service plan and medical
records raised below.  

We review a trial court’s decision to
admit or exclude evidence for an abuse of discretion.  Whirlpool Corp. v. Camacho, 298 S.W.3d 631, 638 (Tex. 2009).  We uphold the trial court’s evidentiary ruling
if the record contains any reasonable basis for it.  Jelinek
v. Casas, 328 S.W.3d 526, 539 (Tex. 2010) (citing Bowie Mem’l Hosp. v. Wright, 79 S.W.3d 48, 51–52 (Tex. 2002) (per
curiam)). 

With respect
to the family service plan exhibits, a trial court may admit a document over a
hearsay objection if it is a “[r]ecord[], report[], statement[], or data
compilation[], in any form, of [a] public office[] or agenc[y] setting forth . . .
the activities of the office or agency [or] . . . matters
observed pursuant to duty imposed by law as to which matters there was a duty
to report . . . .” See
Tex. R. Evid. 802, 803(8).  Texas law requires the Department to file the family
service plan in the trial court within 45 days after conservatorship is
granted.  Tex. Fam. Code Ann. § 263.101 (West 2009).  The Department complied with this
requirement.  As a statement and
compilation of data required to be filed with the court, the plan qualifies as
a public record.  It thus was within the
trial court’s discretion to determine that the copies of the plan were
admissible.  See Owens-Corning Fiberglas v. Malone, 972 S.W.2d 35, 43 (Tex.
1998). 

Relying on
section 263.102 of the Family Code, the mother also contends that the Spanish
version of the family service plan is not competent evidence because the
Department gave her only the English version of the plan, and her native language
is Spanish.  See Tex. Fam. Code Ann.
§ 263.102 (West 2009).  That
provision requires the family service plan to “be in writing in a language that
the parents understand, or made otherwise available.”  Id.  The mother, however, admitted at trial that
she did receive the family service plan in Spanish.  In any event, she did not raise this
objection at trial and therefore did not preserve it for appellate review.  See
Tex. R. App. P. 33.1.

With respect to the medical records,
the mother objected on the grounds that they were hearsay, “not relevant as a
second opinion” and not made by the proper individual.  Hearsay evidence may be admitted if it is a 

record [or] report . . . in any form of acts, events,
[or] conditions . . . made at or near the time by, or from
information transmitted by, a person with knowledge, if kept in the course of a
regularly conducted business activity, and if it was the regular practice of
that business activity to make the . . . report [or] record . . .
all as shown by the testimony of the custodian or . . . by
affidavit that complies with Rule 902(10).

 

Tex. R. Evid. 803(6).  The record
indicates that the Department timely filed notice to use the medical records as
a business record, as well as an affidavit from the custodian of those records.
 The records custodian affidavit averred that
the custodian was providing the records; that they were made in the regular
course of business, by someone with personal knowledge; and that it was the
regular conduct of business to keep such records.  The affidavit complies with Texas Rule of
Evidence 902(10), which provides a reasonable basis for admitting the medical
records.  See Malone, 972 S.W.2d at 43. 

B.      Caseworker
testimony

The mother also challenges the trial
court’s decision to allow McCartney to testify about medical issues because she
did not qualify as a medical expert.  Specifically, the mother claims that McCartney
could not testify to the injuries R.R. suffered or give medical opinion
testimony as to the mother’s psychological state.  The medical records addressing R.R.’s
condition and care, however, were properly admitted before McCartney testified,
and she did not form her own independent medical opinions about R.R.’s
diagnosis and treatment.  The mother also
waived this objection by allowing the same or similar evidence to be introduced
without objection at other times during the trial.  Her contention, therefore, lacks merit.  See Volkswagen
of Am., Inc. v. Ramirez, 159 S.W.3d 897, 907 (Tex. 2004).  

III.    Trial procedure 

The mother
contends that the trial court erred in altering the trial proceedings by
allowing the Department to call all of their direct witnesses before allowing the
mother’s counsel to cross-examine them. The mother’s trial counsel objected
only once to a perceived alteration of trial procedure.  This occurred when the judge stopped the
questioning during defense counsel’s cross-examination of McCartney to handle a
matter for another case.  When the trial
resumed, defense counsel asked to call the mother to the stand instead of
continuing the cross-examination.  The
court refused the defense’s request to call a witness during the plaintiff’s
case-in-chief. 

The counsel’s
request to call the mother to the stand during cross examination of another
witness would have deviated from “traditional” trial procedure.  See Tex. R. Civ. P. 262, 265.  Defense counsel cross-examined every other
Department witness or failed to object, and therefore presents no issue for
review.  Tex. R. App. P. 33.1. 

IV.     Appointment
of attorney ad litem

The mother
asserts that the trial court erred by failing to appoint an attorney ad litem
for her.  Section 107.013 of the Family
Code requires mandatory appointment of an attorney ad litem for an indigent
parent wishing to challenge their termination of parental rights.  Tex.
Fam. Code Ann. § 107.013 (West 2009).  Subsection (d) declares that a determination
of indigence will not occur until the parent has filed an affidavit of
indigence.  See id. § 107.013(d) (citing Tex.
R. Civ. P. 145(b)).  Although the
availability of mandatory appointment of counsel in parental termination cases
is vitally important, appointment is not required when a parent makes no effort
to seek such an appointment and appears with representation at trial.  See
Sylvia M. v. Dallas Cnty. Child Welfare Unit of Tex. Dep’t of Human Servs.,
771 S.W.2d 198, 205 (Tex. App.—Dallas 1989, no writ).  

The record
does not show that the mother sought an appointment of counsel prior to the
trial, and she appeared with counsel at the beginning of trial.  The mother never executed an affidavit of
indigence, and the record shows that she had full-time employment and was able
to support herself independently while the proceeding was pending.  See
Tex. Fam. Code Ann. § 107.013(d).  Under these circumstances, the trial court had
no obligation to appoint counsel.

The mother
also contends that she should have been admonished by the court of her right to
mandatory counsel prior to the final trial setting.  The mother received written notice of her
right to counsel when she was served with the Department’s original petition,
which recites that counsel will be provided if the mother is found to be
indigent.  Because the mother did not
seek such an appointment or show herself to be qualified for a mandatory
appointment, we hold that the trial court did not err in failing to appoint a
guardian ad litem for the mother.

V.      Sufficiency
of the evidence challenge

          A.      Standard of Review

The mother challenges the legal and
factual sufficiency of the trial court’s finding, pursuant to section 161.002(2),
that termination was in R.R.’s best interest. 
See Tex. Fam. Code Ann.
§ 161.001(2) (West Supp. 2010).  A strong
presumption exists that a child’s best interests are served by maintaining the
parent-child relationship.  In re L.M., 104 S.W.3d 642, 647 (Tex.
App.—Houston [1st Dist.] 2003, no pet.). 
The Department has the burden to prove by clear and convincing evidence
that termination is in the child’s best interest.  In re G.M.,
596 S.W.2d 846, 847 (Tex. 1980).  The same evidence of acts or omissions
used to establish grounds for termination under section 161.001(1) also may be
probative in determining the best interests of the child.  In re C.H., 89 S.W.3d 17, 28 (Tex. 2002); In re L.M., 104 S.W.3d at 647.  

B.      Analysis

In Holley v. Adams, the Texas Supreme Court provided a
nonexclusive list of factors that the trier of fact in a termination case may
use in determining the best interest of the child.  544 S.W.2d 367, 371–72 (Tex. 1976).  These factors include: (1) the desires of the
child; (2) the emotional and physical needs of the child now and in the future;
(3) the emotional and physical danger to the child now and in the future; (4)
the parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent that may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions of the parent.  Id.  These factors are not exhaustive, and the
Department need not prove all factors as a condition precedent to parental
termination.  In re C.H., 89 S.W.3d at 27; Adams v. Tex.
Dep’t of Family & Protective Servs., 236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no
pet.).  Nevertheless, termination of the
parent-child relationship is not justified when the evidence shows that a parent’s
failure to provide a more desirable degree of care and support of the child is
due solely to misfortune or the lack of intelligence or training, and not to
indifference or malice.  Clark v.
Dearen, 715 S.W.2d 364, 367
(Tex. App.—Houston [1st Dist.] 1986, no writ). 


For legal sufficiency purposes, we
consider those factors supporting the finding that termination was in the
child’s best interest.  Yonko v. Dep’t of Family & Protective
Servs, 196 S.W.3d 236, 243 (Tex. App.—Houston [1st Dist.] 2006, no
pet.).  Then, we balance the factors
presented in the legal sufficiency argument against the evidence that undercuts
any finding that termination is justified under the statute.  In re C.T.E., 95 S.W.3d 462, 467 (Tex. App.—Houston [1st Dist.] 2002, pet.
denied).  A court of appeals should
consider whether disputed evidence is such that a reasonable factfinder could
not have resolved that disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).  If, in light of the entire record, the
disputed evidence weighing against termination is so significant that a
factfinder could not reasonably have formed a firm belief or conviction that
termination was justified, then the evidence is factually insufficient to
support termination.  Id.  A court of appeals should detail in its
opinion why it has concluded that a reasonable factfinder could not have
credited disputed evidence in favor of termination.  Id. at 266–67.

          1.       The desires of the child

          R.R.
was five months old when he was removed from his mother’s custody, and thus
cannot express his custody preference.  The
foster mother caring for R.R. testified that he was bonding to her family and
that he was healing and showing improvement from the injuries he had
sustained.  She explained that when R.R.
first came into her care, he would wake up most nights in the middle of the
night screaming and trembling.  After
about two months, she related, he stopped doing that and now seems very comfortable
with the family.  No evidence indicates
that R.R. had any desire to return to the mother.  In light of the evidence produced of the
child’s progress and bonding, this factor weighs in favor of termination being
in the child’s best interest.

2.       The
emotional and physical needs of the child 

 

The foster
mother testified that she has taken the child to the dentist, occupational
therapist, ENT doctors, and a neurologist. She stopped working full-time so
that she could devote her full attention to R.R.’s needs.  These facts weigh heavily in favor of
termination being in the child’s best interest.

3.       The emotional and physical danger to the
child 

Medical
records showed that R.R. suffered multiple severe injuries to his head and legs.  Those records also showed the treating
physician believed that these injuries resulted from abuse or neglect.  R.R. suffered additional serious injury even
after he was removed from the mother’s care and placed with a caregiver of her
choice.  

The mother
waited nine days before taking the baby to the doctor after noticing that his leg
was swollen.  By the time the mother took
R.R. for medical treatment, he suffered from vomiting and diarrhea.  McCartney testified that R.R.’s injuries were
more serious than those usually found in child abuse cases.  The mother admitted to being numerous
occasions of physical abuse in her relationship with R.R.’s father, as well as
having had a previous marriage of twenty years that also was physically abusive.
 The mother also admitted that she left
R.R. alone with the father even though she knew he was abusive.  Although she took the parenting and domestic
violence courses required by the Department, but she did not demonstrate that
she learned how to better care for a child or avoid abusive relationships in
the future.  This factor weighs in favor
of termination.




 

          4.       The parental abilities of the individuals
seeking custody

The foster mother with whom R.R. had been staying for eight
months testified that the child was receiving therapy and has been taken to
multiple medical specialists. The foster mother took time off from her
full-time job to commit herself to R.R.’s care. 
R.R. has become comfortable with the foster family.  The foster mother has cultivated substantial
stability and security in R.R.’s life and has demonstrated proficiency in
meeting R.R.’s needs.

The mother testified that she
intended to protect R.R. and keep him safe. 
Her history of abusive relationships and instability, however, outweigh her
positive intention to provide security.  The mother parented three children during her
previous marriage.  The youngest was
fourteen when she left Mexico, and all of those children remained in Mexico
with their grandmother after the mother moved to Texas.  She had not seen them for three years.  The mother raised those children in an
abusive household, and then began another abusive relationship that produced
R.R. 

R.R.’s
initial injuries occurred while he was in the mother’s custody, and she delayed
in obtaining medical treatment for him for nine days after his leg became
swollen.  Additional injuries occurred
after the child was placed with a caregiver of the mother’s choice.  R.R’s serious injuries and the delay in
obtaining medical treatment show a lack of parenting ability.  Those circumstances weigh in favor of
termination being in R.R.’s best interests.

5.       The programs available to assist these
individuals to promote the best interest of the child

The family service plan laid out
specific requirements that the mother needed to complete.  Completing the plan, however, did not mean
that the mother would regain custody of R.R. After R.R.’s second visit to the
hospital, where he was diagnosed with a new injury, the Department consistently
stated that its goal for R.R. was substitute care.  McCartney testified that under no
circumstances would the mother regain custody of R.R., and that the plan’s
requirements were solely for the benefit of the mother and any child she might
have in the future.  The evidence showed
that the mother completed the domestic violence and parenting classes, but that
she did not display any improved understanding of those issues afterward.  The mother also made no attempt to undergo
the required psychological evaluation, which McCartney explained was much more
important than the class completion requirements.  Additionally, the mother was not in regular
contact with her caseworker regarding her progress in completing the plan’s requirements.  The mother’s attempt to complete some of the
plan’s requirements weighs against termination being in the child’s best
interest.  But the mother’s failure to successfully
take advantage of the programs offered by the Department weighs in favor of the
conclusion that termination was in R.R.’s best interest.

6.       The plans for the child by these
individuals

The mother’s stated plan for R.R. was
that he “stay with her and to keep him in church and on the right path.  She wants to give him the best that she is
able and for him to be in good health and be a good boy.”  The foster mother stated that she plans to
place him in private school and continue to work with the occupational and
communication therapists on minimizing his developmental delays.  The foster mother stated that her family prioritizes
love, security, and care in its plans for the child’s future. The foster family
has already started physical and occupational therapy for the child.  The mother’s plans show some awareness of the
child’s needs, but her inability to give R.R. a safe and secure environment in
the past indicates that she may fall short in implementing them.  The foster family’s plans show a strong
commitment to meeting the child’s needs and support the trial court’ s finding that
termination is in the best interest of the child.

7.       The stability of the home or proposed
placement

R.R. came from an abusive home and
suffered from night terrors when he initially was placed with the foster
family.  The mother did not have adequate
or safe child care arrangements for R.R. when she went to work.  He suffered serious injuries after being left
with caregivers chosen by the mother. 
When the mother was with R.R., she was inattentive to his obvious
injuries.  In contrast, testimony showed
that the child has bonded to the foster family, he now sleeps soundly through
the night, and his behavior has changed over time, showing a degree of security
in his new home.  The stability of the
foster family’s home supports the conclusion that termination is in the child’s
best interest.

8.
      The acts or omissions of the parent
that may indicate that the existing parent-child relationship is not a proper
one

The mother left the child with his
father, a man she knew to be physically abusive and who previously had threatened
to kill her.  The mother waited nine days
to take her child, who was vomiting, had diarrhea, and a swollen leg, to a
doctor, then purposefully withheld information for fear of further
investigation.  After the child was place
with another caregiver of the mother’s choosing the child sustained further
substantial injury. The attending physician at the hospital indicated that
abuse or neglect was likely and that the injuries were serious.  These acts and omissions weigh in favor of
termination.




 

9.       Any excuse for the acts or omissions of
the parent  

When asked to explain her delay in
obtaining medical care for R.R., the mother stated that she believed the injury
was not serious and did not think that R.R.’s leg was broken, and she
attributed his discomfort to immunizations R.R. received over a month before.  She also stated that, while she knew the
father was abusive, she never saw him abuse R.R., and insisted that she only
left R.R. with the father for three hours.  The mother’s acts and omissions and the
absence of any reasonable explanation for allowing her child to suffer for such
a protracted period before seeking medical treatment weigh in favor of the
conclusion that termination is in R.R.’s best interest.

We find that the
evidence in this case is legally and factually sufficient for the trial court
to have formed a firm belief or conviction that termination was justified.  This case is one where the mother’s offending
behavior is egregious.  The foster mother
has had custody over R.R. for longer than the mother herself, allowing him to
bond to his new placement.  While away
from his mother, R.R. has healed and improved in all areas of development.  In light of all the evidence, the trial court
could have reasonably formed a firm belief or conviction that termination of the
mother’s parental rights was in R.R.’s best interest.  See Jordan
v. Dossey, 325 S.W.3d 700, 730 (Tex. App.—Houston [1st] 2010, pet. denied)
(holding that evidence was sufficient where mother remained in an abusive
relationship with the father, attempted suicide, showed a lack of parenting
abilities, and foster family was stable, and bonded to the child); In Re T.M.J., 315 S.W.3d 271, 278–79
(Tex. App.—Beaumont 2010, no pet.) (holding that evidence was factually
sufficient to find termination was in child’s best interests even though mother
completed two out of thirteen family service plan requirements; mother
occasionally was physically abusive, and there was testimony indicating she was
indifferent to her children); In re J.H.G.,
313 S.W.3d 894, 895–96 (Tex. App.—Dallas 2010, no pet.) (holding that
sufficient evidence supported termination where mother had completed majority
of service plan but had not bonded to child, had no support system, and foster
family was stable and willing to adopt); M.C.
v. Texas Dep’t of Family and Protective Servs., 300 S.W.3d 305, 311 (Tex.
App.—El Paso 2009, pet. denied) (holding that sufficient evidence supported
termination where mother did not maintain contact with the Department, showed
no emotion when attending to child, did not participate in services offered,
displayed violent behavior; evidence also showed that foster parents had bonded
to child and met medical needs mother had not).

 




 

Conclusion

We hold that the trial court did not
abuse its discretion in denying the mother’s motion for continuance.  We further hold that the mother waived any
challenge to the admissibility of exhibits 1, 2, 6, and 7, and that the trial
court did not abuse its discretion in admitting the other challenged exhibits.  The trial court did not err in finding that the
mother received the family service plan in both English and Spanish or in allowing
McCartney to testify to facts contained in R.R.’s medical records.  We also hold that the trial court was not
obligated to appoint counsel for the mother, and did not abuse its discretion
in managing the trial procedure. 
Finally, we hold that the evidence is legally and factually sufficient
to support a finding that termination was in the best interest of the child.  We therefore affirm the judgment of the trial
court.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Huddle.