Jamie R. O'CONNOR, Appellant,

v.

Daniel K. O'CONNOR, Appellee.

No. 01–06–00445–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 17, 2007.

Order Denying Rehearing
Sept. 20, 2007.

R. Scott Wolfrom, Law Offices of R. Scott Wolfrom, Houston, TX, for Appellant.

Sharon Dixon Cammack, Short, Jenkins & Kamin LLP, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, HANKS, and BLAND.

## OPINION

SAM NUCHIA, Justice.

Appellant, Jamie R. O'Connor, appeals the final decree of divorce rendered by the trial court. She presents four issues complaining that the trial court erred by (1) denying her motion for continuance, (2) denying her request for a jury trial, (3) dividing the community property unjustly, and (4) entering an injunction barring her from having any periods of possession or any access to the minor children. We affirm.

## BACKGROUND

Appellant and appellee, Daniel K. O'Connor, were married in 1989. On September 27, 2004, appellee filed for divorce. The trial court signed temporary orders that gave appellant possession of the family home and the right to determine the residence of the two minor children and required appellee to pay child support to appellant. The final decree of divorce was signed on April 12, 2006.

The record indicates that, during the 18.5 months in which this case was pending, appellant had four attorneys. Each of those attorneys represented appellant for a period ranging from one to four months, with a gap of one to one and one-half months between attorneys, during which time appellant appeared pro se. Appel-

lant's fourth attorney was court-appointed and was to be paid from funds deposited in the registry of the court by appellee. That attorney filed a motion to withdraw as counsel, which was granted on November 18, 2005. From that date through the filing of the notice of appeal, appellant again appeared pro se.

The first trial setting was May 9, 2005. The trial court granted appellant's motion for continuance for that date and for the subsequent settings for July 18, 2005 and August 15, 2005. Each of the motions stated that there had been inadequate time for discovery, and the third motion also cited the lack of counsel as a reason for a continuance.

On August 3, 2005, the trial court appointed an amicus attorney to assist the court in protecting the children's best interests. *See* TEX. FAM.CODE ANN. §§ 107.001, 107.003, 107.005, 107.021, 107.023 (Vernon Supp.2006). Thereafter, the amicus attorney participated in all trial settings.

The case was called to trial on September 19, 2005. Appellee appeared with his counsel, and the amicus attorney appeared, but appellant did not. The trial court received a fax on Cypress Creek Hospital letterhead stating that appellant had been under the care of a physician since September 15, 2005. The trial court clarified that Cypress Creek Hospital is a psychiatric hospital. In light of that fact, the amicus attorney requested the court to recess the trial and to entertain an emergency motion regarding the children. Although the trial court and the parties were unable to confirm that appellant had been admitted to the hospital, the trial court granted the request to proceed on the emergency motion.

Appellee's counsel had subpoenaed two witnesses: Dr. Richard Krummel, appellant's former treating psychologist, and Dr. Lawrence Abrams, the court-appointed psychologist. Krummel testified that he had treated appellant from April 2003 to August 2005. Initially, he saw her weekly, but for the last year, he saw her twice weekly due to her increased stress level, her emotional instability, and her deterioration into delusional, paranoid thought. Early in her therapy, she showed signs of moderate to severe depression. Later, she began to exhibit characteristics of bipolar disorder and then delusional thoughts. She resisted his suggestions that she seek treatment at an inpatient facility or get additional help from a psychiatrist. She told him once that she had taken her son's medication, which had been prescribed for his attention deficit disorder. Krummel testified that he would not recommend that a person with appellant's symptoms have the primary residence for eight- and ten-year-old children.

Abrams testified that he had met with appellee four times, the two children twice, and appellant twice. He testified that appellee was capable of taking care of the children and that the children were friendly and comfortable with him. He further testified that he was not able to complete the interview material with appellant because she talked about a conspiracy against her and other problems. He said that she apologized for having suspected that he was involved in the conspiracy. He referred to her "incessant dialogue" and "repetitive material" and said that she made references to evidence that "went on and on without anything being pinned down." He expressed concern about her paranoia and fixed delusions, such as believing people were buying her property and stealing her life, which "can be repeated for hours," along with her evidence, which was "totally illogical." He described her as being "on the edge of a cliff about ready to fall over."

Appellee testified that, since December, appellant had asked him to take the children for increasing amounts of time. He said that she explained that she needed to concentrate to prepare for court and to research. He testified that he had the children for all but six days of June and all of July. He also testified that she threatened to have him put in jail, said that the FBI was going to arrest him, and accused him of conspiring with his attorney to defraud her. Appellee testified that, when the children were living with appellant, he had to keep his son's medication because, otherwise, appellant would take it rather than give it to their son. Appellee said that he would go to appellant's home each morning to give his son the medication.

At the end of the hearing, the trial court awarded appellee temporary managing conservatorship with the right to determine residency of the children and the right to move back into the family home. The court also abated child support.

The court reconvened for trial proceedings on December 19, 2005. After testimony from a witness regarding appellee's involvement in the children's activities and during testimony from appellee, appellant, who was appearing pro se, objected to appellee's testimony and to the trial, saying that the trial court refused to consider her motion for disqualification of the court, which was based on the court's close relationship with a party involved in the case, the associate judge, whom appellant believed to be a silent partner in a land and oil deal with appellee and his attorney. The trial court stated that, although he believed that both he and his associate judge were not recused, he would refer the case to the Administrative Judge for reassignment. The trial court then declined appellant's request to rule on pending motions. The case was transferred to Judge Lisa Millard, who set trial for February 1,

2006. The case was reset by agreement of the parties to March 27, 2006. The trial court denied appellant's motion for continuance, which was filed March 13, and the trial on the merits began on March 27.

Before the trial began, appellant asked the court about the motions she had filed that were to be heard that morning. The court said, "And you weren't present this morning, so they were denied." There was no further discussion regarding the motions.

During the trial, Krummel and Abrams again testified regarding appellant's mental problems. In addition, Tracy Lampson, a friend and neighbor of the O'Connors testified regarding positive interaction she had observed between appellee and his children. She also testified about appellant's inappropriate and erratic behavior, such as arguing with appellee in front of the children, telling the children that their father was going to federal prison and that she was going to have Mr. Lampson, the boys' baseball coach, put in jail. Lampson testified that the other parents did not want the O'Connor's son on the team because appellant was very disruptive at the games. Lampson further testified that she stopped allowing her son to go to appellant's home because appellant did not supervise the children and once allowed them to go to a store several blocks away when they were only nine years old. She said that since the children have been living with appellee, she allows her son to visit and to spend the night with the O'Connors' son.

The trial court rendered a decree appointing appellee sole managing conservator and appellant possessory conservator. The court found it in the children's best interest not to order visitation. Appellee was awarded the residence and all furnishings. Each party was awarded the bank

account in his or her name. Appellee was awarded the 1997 Ford truck and appellant was awarded the 2004 Tahoe. Each party was awarded his or her retirement or pension plan, any insurance policy in his or her name, and his or her jewelry and personal property. Appellee was ordered responsible for all debt listed in the inventory. The trial court permanently enjoined appellant from speaking or writing any obscene, disparaging, or demeaning remarks to or about appellee in the children's presence; from discussing or referring to any issues or proceedings related to the present lawsuit in the children's presence; from going within 200 yards of appellee's residence; from placing more than one telephone call daily to appellee or the children; from placing any telephone call to appellee or the children between 8:00 p.m. and 8:00 a.m.

## DISCUSSION

### 1. Amicus Attorney

■ Because the amicus attorney has filed a brief, we first address whether the amicus attorney has a role in this Court. In response to questions by this Court, the amicus attorney states that the statute does not define whom the amicus attorney represents. She reasons that, because she is charged with assisting the court and, by statute, is to "participate in the litigation to the same extent as an attorney for a party," she would be derelict in her duties if she did not file a brief in this Court. She quotes a paper presented at a family law course, which states, "When a court-appointed attorney has not been discharged by the court, the representation continues through the appellate process." Reginald A. Hirsch, Joseph Indelicato, Jr., and Lauren E. Waddell, *Who Represents the Child? Not Me, I Am the Amicus Attorney!*, 32nd Annual Advanced Family Law Course, August 14–17, 2006, San Antonio, Texas.

The statute defines an amicus attorney as follows:

> "Amicus attorney" means an attorney appointed by the court in a suit, other than a suit filed by a governmental entity, whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child.

TEX. FAM.CODE ANN. § 107.001 (Vernon Supp.2006). Under the Family Code, an amicus attorney and an attorney ad litem appointed to represent a child have the same duties. TEX. FAM.CODE ANN. § 107.003 (Vernon Supp.2006). However, there is one important distinction. The attorney ad litem represents the child. The amicus attorney is appointed specifically to assist the court. And the plain language of the statutory definition of amicus attorney can mean only that the amicus attorney assists the court that appointed her. *See id.* To whatever extent the trial court has a role during an appeal of the final decree, the amicus attorney may assist that court. But the amicus attorney represents neither an appellant nor an appellee and therefore has no basis for filing a brief in the appeal. Nothing in the Family Code indicates that the amicus attorney should participate in an appeal. *See* TEX. FAM.CODE ANN. §§ 107.001–.023 (Vernon Supp.2006).

Because the amicus attorney is "to provide legal services to assist the court," the trial court is, in effect, the amicus attorney's client for a limited purpose. But the trial court is not a party either to the underlying case or in this appeal. Therefore it is as inappropriate for the amicus attorney to file a brief as it would be for the trial court to file one. Accordingly, we

do not consider the amicus attorney's brief.

## 2. Motion for Continuance

▮ In her first issue, appellant contends that the trial court erred by denying her motion for continuance. A motion for continuance may not be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex.R. Civ. P. 251. When requesting additional time for discovery, the movant must aver, by affidavit, that the matters to be discovered are material, show the materiality of the discovery, and show that she has used due diligence to procure the matters. *See* Tex.R. Civ. P. 252; *Hatteberg v. Hatteberg*, 933 S.W.2d 522, 527 (Tex.App.-Houston [1st Dist.] 1994, no writ) (stating that, when requesting additional time for discovery, rule 252 must be complied with under oath). Absence of counsel alone is not good cause for a continuance. Tex.R. Civ. P. 253. We review a trial court's denial of a motion for continuance for abuse of discretion. *Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex.1986).

Appellant asserted in her motion for continuance that discovery was incomplete and that she needed more time to gather the financial resources to retain counsel and to "develop separate property claims and many other issues she deems (critical) [sic] to the proper valuation of the community and separate estates." She also asserted that, due to her lack of knowledge and understanding of family law, she would be unable to perform all of the requirements of the scheduling order without counsel. Appellant's motion for continuance did not comply with rules 251 or 252. The motion was not supported by affidavit. It did not state the financial or other matters she wanted produced, the separate property claims she was making,

or what "other issues" she deemed critical to the valuation of any property. In addition, she did not state what efforts she had made to discover the necessary information or to retain an attorney since November 18, 2005, the date on which her previous attorney withdrew. We hold that the trial court did not abuse its discretion by denying appellant's motion for continuance. We overrule appellant's first issue.

## 3. Right to Jury Trial

▮ In her second issue, appellant contends that the trial court erroneously denied her a jury trial, although she had timely requested a jury trial and had paid the jury fee. Appellant argues that, although her jury demand and fee payment made on September 7, 2005 was not timely for the September 19 trial setting, it became timely when the trial was reset for December 19. *See Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex.1991) (concluding that untimely filed jury request became timely when trial was reset to date more than 30 days after jury request was filed).

Appellee responds that, not only was appellant's request for a jury trial untimely, but it was not a proper, written request as required by rule 216 of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 216. Appellant's jury-trial request was handwritten on an 8 1/2 by 11 inch sheet of paper. It was entitled "Jury Trial Demand" and contained the trial court cause number and the names of appellant and appellee. Also written on the paper was "In the best interest of" the two children of the marriage. This paper had the District Clerk's file stamp dated September 7, 2005. Appellee argues that this paper is insufficient to satisfy the requirement of rule 216, citing *ForScan Corp. v. Dresser Industries, Inc.*, 789 S.W.2d 389 (Tex.App.-Houston [14th Dist.] 1990, writ denied). In *ForScan*, the appellant's trial attorney

mailed the jury fee to the district clerk with a cover letter stating the "our firm check in the amount of $10.00 which represents the jury fee for the above-referenced cause" was enclosed. *Id.* at 392. The court of appeals held that the cover letter was not a sufficient jury trial request "because nowhere does it request, apply for or demand a jury." *Id.* Thus, it was neither the brevity nor the informality of the letter that rendered it insufficient. Rather, it was the lack of any actual request.

In the present case, appellant's filing, although very brief and quite informal, was very clearly a demand for a jury trial. We conclude that it was sufficient as a jury request.

■ Appellee also argues that the trial began on September 19, the trial court was in recess until December 19, and was again in recess until March 27. Thus, appellee argues, the jury request was untimely and was never revived as a timely request.

At the beginning of the hearing on September 19, the trial court stated, "This is [the] trial date set by the Court." The court then noted those present and stated that appellant was not present. After a discussion regarding the possibility that appellant was in a psychiatric hospital, the amicus attorney stated, "I would like, if we could recess the trial, and if you would entertain an emergency motion with evidence presented regarding the children [because appellant was in a psychiatric hospital]." After more discussion regarding appellant's hospitalization, the court stated, "I'm going to declare this case in trial and I will hear only today the emergency request by [the amicus attorney]." The court also admitted petitioner's exhibits 1 through 60.

On December 19, the trial court announced the case and said, "This is a continuation of a trial which commenced on September 19, 2005." Thus, the trial court made it clear that the trial began on September 19, and appellant's jury trial request was untimely. We overrule appellant's second issue.

### 4. Division of the Community Property

■ In her third issue, appellant complains that the trial court "awarded virtually all the community property" to appellee although appellant had not worked outside the home during their 17–year marriage and she was still unemployed.

In its findings of fact and conclusions of law, the trial court listed the community assets and liabilities and their values. In its division of the assets and liabilities, the trial court awarded appellee the house, a 1997 Ford truck, and various accounts for a total of approximately $238,000 in assets and 100% of the liabilities, which totaled $57,633 and included the balance owed on appellant's 2000 Tahoe and the amicus attorney's fees. The trial court awarded appellant an investment account valued at $23,674, an annuity valued at $78,734, and the 2000 Tahoe valued at $10,411 for a total of $112,819. Thus, appellee was awarded approximately 61.5%, and appellant was awarded approximately 38.5% of the community estate. Appellant was not ordered to pay child support or to provide medical insurance for the children.

■ "In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM.CODE ANN. § 7.001 (Vernon 2006). The trial court may make an unequal division of the marital property if there is a reasonable basis for doing so. *Massey v. Massey,* 807 S.W.2d 391, 398 (Tex.App.-Houston [1st Dist.] 1991), *writ denied,* 867 S.W.2d 766

(Tex.1993). We review the trial court's property division for abuse of discretion. *Raymond v. Raymond,* 190 S.W.3d 77, 82 (Tex.App.-Houston [1st Dist.] 2005, no pet.).

In its findings of fact and conclusions of law, the trial court recited 14 factors that it took into consideration in determining the just and right division of the marital property, including the following:

- disparity of earning power of the spouses;
- health of the spouses;
- the spouse to whom conservatorship of the children was granted;
- needs of the children;
- education and future employability of the spouses;
- community indebtedness and liabilities;
- tax consequences of the division of property;
- nature of the property involved;
- credit for temporary support paid by one of the spouses; and
- attorney's fees and amicus attorney fees paid and to be paid.

Because appellee would have the sole responsibility for the children, and appellant would not be required to provide child support or health insurance, we cannot say that the trial court abused its discretion by its division of the marital property. We overrule appellant's third issue.

### 5. The Injunction

In her fourth issue, appellant contends that the trial court erred by entering a permanent injunction barring her from any physical access to her children. She argues that the injunction was not in the best interests of the children and went beyond any relief requested by appellee, who in his testimony asked that appellant be allowed supervised visitation. We re-view the trial court's order regarding custody, control, possession, and visitation for abuse of discretion. *Turner v. Turner,* 47 S.W.3d 761, 763 (Tex.App.-Houston [1st Dist.] 2001, no pet.).

Two psychologists testified regarding appellant's psychological state. Her treating psychologist testified that appellant's condition was deteriorating and that she refused to get further help. He knew of one instance in which she took her son's ADD medication, but she would not go to a psychiatrist, who could prescribe medication that would be appropriate for her.

Appellee testified that, in fact, appellant regularly took their son's medication, thereby depriving their son of his prescribed treatment. Appellee also described appellant's erratic behavior on several occasions, using profanity and creating scenes in public to the embarrassment of the children. There was testimony that some parents did not want appellant's son on their boys' baseball team because appellant was so disruptive at games.

Throughout the trial, appellant was argumentative with both the witnesses and the court. She made frequent references to the plots against her, to money stolen from her, and to assistant judges who were helping appellant take her separate property. She accused appellant of owning the oil industry, being responsible for Enron, and spending millions and millions of dollars "paying off people."

Considering appellant's erratic and uncontrolled behavior in the presence of her children and others and her unwillingness to get the help she needs, we cannot say, based on the record before us, that the trial court abused its discretion by entering an injunction barring appellant's access to the children at the current time. We overrule appellant's fourth issue.

## CONCLUSION

We affirm the trial court's final decree.

## ORDER

PER CURIAM.

On this date, the Court considered appellant's motion for rehearing and the motion is hereby **denied.**

It is so **ORDERED.**

Justice BLAND, dissenting from denial of rehearing.

JANE BLAND, Justice, dissenting from denial of rehearing.

This is an appeal from a final decree of divorce and conservatorship of two minor children. In our opinion, we affirm the judgment of the trial court, which, in part, denies the mother visitation and physical access to the children. On rehearing, the mother observes that no party to the case requested that she be denied physical access, and thus the trial court's order went beyond the relief requested by the father, who had asked that the mother be limited to supervised visits with her children. I would grant rehearing, modify the trial court's judgment, and affirm, granting the relief requested by the father—supervised visitation, deleting the open-ended order barring all visitation and physical access.

A trial court has wide latitude in determining the best interests of a minor child and to promote the stability of the child's environment. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982). The denial of all visitation with their mother, however, could be as detrimental to the interests of the children as much as or more than allowing supervised access. Because no one requested such relief, none of the experts opined in the record as to whether the harm from the complete denial of physical access would be outweighed by the harm (if any) of supervised visits. The record thus does not support denial of all visitation. *See Voros v. Turnage*, 849 S.W.2d 353, 354–55 (Tex.App.-Houston [1st Dist.] 1992) (trial court abused its discretion in departing from the standard visitation order when it did not state "good reasons" to justify the deviation), *appeal after remand*, 856 S.W.2d 759 (Tex.App.-Houston [1st Dist.] 1993, writ denied) (affirming departure based on trial court's findings and an increase in visitation time); *see also* TEX. FAM.CODE ANN. § 153.252 (Vernon 2002) (establishing a rebuttal presumption that the standard visitation order is in the best interests of a child and provides reasonable minimum possession of the child). Though the trial court doubtless sought to curb the effect that the mother's disruptive and erratic behavior might have on the children, the father thought that supervised visits would take care of the problem, and none of the experts in the case contradicted this approach.[1] No evidence in the record indicates that supervised visits would be harmful to the children or that visits would endanger the children. Should the record contain such evidence, a trial court would be within its discretion to enjoin physical access. Depriving the children of all visitation with a parent, however, has its own physical and emotional impact—and without a request to do so, or evidence in the record that even limited contact would itself be harmful (as opposed to the general problems that the mother has), I would modify the judgment to grant the relief

---

1. The father testified, "I'm asking the Court for supervised visitation for [the mother] and the children ... I would like to make it as comfortable for the children as possible so that it doesn't interfere with their activities, but I do want the children to be able to see their mother."

requested by the father, delete the provision enjoining physical access, and affirm as modified.

