**Opinion issued December 30, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-01089-CV

———————————

**CAROLEE A. KING, Appellant / Cross-Appellee**

**V.**

**DONALD JOSEPH LYONS, Appellee / Cross-Appellant**

---

**On Appeal from the 306th District Court**
**Galveston County, Texas**
**Trial Court Case No. 12FD2550**

---

## O P I N I O N

This case presents cross-appeals from an order granting mutual permanent injunctions after both parties filed petitions to modify the parent-child relationship of their only daughter, A.X.L., a minor child. The trial court enjoined each parent

from coming within 200 yards of the other parent's residence or place of employment, with certain exceptions. The parents make similar, mirror-image complaints, each arguing that the other parent failed to plead for such an injunction, that the issue was not tried by consent, and that the evidence was legally and factually insufficient to support the injunction.

Neither parent's pleadings requested the permanent injunctions at issue, and the record does not reflect that this issue was tried by consent. Accordingly, we reverse the trial court's order in part, and we vacate the mutual permanent injunctions requiring the parents to stay more than 200 yards away from each other's residence and place of employment.

## Background

A.X.L. was born in 2005 and adopted a year later by Carolee King and Donald Lyons. In 2007, King and Lyons divorced and were appointed joint managing conservators of their daughter. Two years later, the parties agreed to a modification of the possession order to allow King to move to Galveston with A.X.L. Lyons later moved to Galveston to be closer to his child.

When A.X.L. was approximately eight years old, King filed a petition to modify the parent-child relationship. King sought an order requiring Lyons to pick up and return A.X.L. at the curb of her residence, as opposed to approaching the door. Lyons opposed that request and filed a counter-petition, seeking an

2

injunction requiring that the parents communicate with each other only by way of a website designed to facilitate shared child custody. Neither parent requested a temporary protective order or sought an injunction to keep the other away from his or her residence or place of employment.

The court heard evidence over two days. The record shows the parents' history of bickering, incivility, and inability to cooperate in both mundane and extraordinary parenting activities. King testified about Lyons's frequent and repetitious communication by text message, telephone, and email, which she characterized as "confrontational," "angry," "demanding," and "argumentative." She testified that she did not respond to each communication; rather she replied only when she could discern a question.

Each parent testified to feeling threatened by the other. King said she felt threatened by Lyons's tone of voice, demeanor, and repetitious communications. She said Lyons once told her he was watching her, and he accused her of having an inappropriate relationship with her boss. Lyons denied threatening, stalking, or engaging a private investigator to follow King. He testified that he felt threatened by the presence of law enforcement and others he saw or thought he saw when dropping off A.X.L. after his periods of possession. King denied having law enforcement present when Lyons returned A.X.L., except for a building security guard when she lived in a high-rise condominium.

3

King works for the University of Texas Medical Branch (UTMB) in Galveston; Lyons works from his Galveston home as a health-care consultant and lectures at Rice University. No testimony or evidence was introduced that related to either parent's behavior in regard to the other parent's place of employment. King testified that she had never been to Lyons's residence.

The testimony regarding Lyons approaching King's residence was limited. King testified that she was "uncomfortable" having Lyons at her front door because he is "sometimes . . . confrontational." She described one verbal confrontation at the child's school and another incident four or five years before trial when Lyons threw A.X.L.'s overnight bag on the ground and was reluctant to relinquish the child after his period of possession.

King testified that the curb was "no more than 60 feet" from her front door, she did not want Lyons to approach her house to assist A.X.L. in carrying her belongings, and she did not wish to exchange the child in a public place because "it's unnecessarily complicated" and would not "serve any purpose."

King also testified that Lyons sometimes came to her home unexpectedly, for example to return A.X.L.'s possessions when only the nanny was present. King was uncomfortable with that, but her 71-year-old nanny, Jo Ann Mulee, was not "because he never came in" and "he stood at the door." Mulee testified that Lyons had not forced his way into the home when dropping off A.X.L. and that he

4

respected the boundary of the door. She was not afraid that Lyons would hurt her physically, and she testified that she greets him warmly when she sees him in public, even hugging him at the first hearing in this case.

King conceded that in the six years prior to trial, she had not seen Lyons sitting outside her home or watching her house, he had not threatened to hurt her, and there had been no physical altercations. In opposing King's request for curbside drop-off of the child, Lyons testified that they had exchanged A.X.L. without altercations for seven years.

During trial, King's attorney requested a trial amendment, asking the court to order Lyons "to stay away" from King's house or to ensure "that the order doesn't require him to be there." Lyons objected. The court did not rule on the requested trial amendment or the objection, but the trial judge commented, "I think it's kind of been tried by consent almost."

At the close of testimony, the judge admonished the parents about the harm their bickering and incivility would cause their daughter and stated, "[Y]ou all really need to do some soul searching on how you're dealing with each other. And I'm going to do my best to try to minimize that."

The trial court's final order required the parties to communicate with each other only by means of a website, to exchange A.X.L. at the curb of King's house, and to comply with mutual permanent injunctions prohibiting each parent from

5

going with 200 yards of the other parent's residence and place of employment, with certain exceptions such as exchanging possession of the child and traveling on public streets. Both parents challenged the mutual permanent injunctions in separate motions for new trial, which were denied. In its findings of fact and conclusions of law, the trial court found that the mutual permanent injunctions were "necessary due to the high level of animosity between the parties" and were "in the best interest of the child." The court also concluded that the mutual injunctions "are necessary as set forth under the terms, conditions, and exceptions in the order." Both King and Lyons appealed.

### Analysis

"A court with continuing, exclusive jurisdiction may modify an order that provides for the conservatorship, support, or possession of and access to a child." TEX. FAM. CODE § 156.001. The court may modify such an order if doing so "would be in the best interest of the child" and upon a showing of a material and substantial change in circumstances. *Id.* § 156.101. Because the "trial court is given wide latitude in determining the best interest of a minor child," we review a modification order under an abuse of discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *see O'Connor v. O'Connor*, 245 S.W.3d 511, 518 (Tex. App.—Houston [1st Dist.] 2007, no pet.). In this case, King and Lyons appeal from the imposition of permanent injunctions that were included in a

6

modification order. Because the granting of injunctive relief is also within the discretion of the trial court, we likewise review an order granting permanent injunctions for an abuse of discretion. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

A judgment must be supported by the pleadings, and a party may not be granted relief in the absence of pleadings to support such relief. TEX. R. CIV. P. 301; *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983); *Salomon v. Lesay*, 369 S.W.3d 540, 553 (Tex. App.—Houston [1st Dist.] 2012, no pet.). "The purpose of pleadings is to define the issues at trial." *Garvey v. Vawter*, 795 S.W.2d 741, 742 (Tex. 1990). A pleading is sufficient if it gives the opposing party adequate information to enable him to prepare a defense. *Roark v. Allen*, 633 S.W.2d 804, 809–10 (Tex. 1982). Though we liberally construe a petition to include claims that may reasonably be inferred from the language used, we may not "use a liberal construction of the petition as a license to read into the petition a claim that it does not contain." *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Similarly, while a prayer for general

relief may include relief consistent with the petitioner's pleading, it cannot be used to "enlarge a pleading to the extent that it embraces an entirely different cause of action for which fair notice does not exist." *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979).

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX. R. CIV. P. 67; *see Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991); *Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no. pet.); *Flowers*, 407 S.W.3d at 458. To determine whether an issue was tried by consent, we must review the record not for evidence of the issue, but rather for evidence of trial of the issue. *Guillory*, 442 S.W.3d at 690; *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied). However, an issue is not tried by consent if the evidence relevant to that issue is also relevant to other issues raised by the pleadings. *See Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 446 (Tex. 1993).

8

The parties' arguments in this case raise two related questions as to a trial court's imposition of injunctions in a suit affecting a parent-child relationship. First, may a court impose an injunction in the absence of pleadings requesting that relief? Second, may injunctive relief in such a case be based solely on the best interest of the child or must there be a showing of the usual elements needed to prove entitlement to a permanent injunction, i.e., a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law?

In general, a permanent injunction must not grant relief "which is not prayed for." *Holubec v. Brandenburger*, 111 S.W.3d 32, 39 (Tex. 2003); *Morgan v. Morgan*, 657 S.W.2d 484, 494 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd). But because the best interest of the child is the principal consideration in a suit affecting the parent-child relationship,[1] some courts have held that trial courts have wide discretion to impose conditions on visitation even in the absence of pleadings requesting such relief. *See O'Connor*, 245 S.W.3d at 518; *Peck v. Peck*, 172 S.W.3d 26, 36 (Tex. App.—Dallas 2005, pet. denied); *MacCallum v. MacCallum*, 801 S.W.2d 579, 587 (Tex. App.—Corpus Christi 1990, writ denied); *see also In re B.J.H.-T.*, No. 12-09-00157-CV, 2011 WL 721511, at *2 (Tex.

---

[1] *See* TEX. FAM. CODE § 153.002; *In re Scheller*, 325 S.W.3d 640, 644–45 (Tex. 2010).

9

App.—Tyler 2011, pet. denied) (mem. op.).[2] A brief discussion of these cases is illustrative.

In *O'Connor v. O'Connor*, 245 S.W.3d 511 (Tex. App.—Houston [1st Dist.] 2007, no pet.), the trial court denied the father's request to grant the mother only supervised visitation with their children, but it enjoined the mother from any physical access to them. *O'Connor*, 245 S.W.3d at 518. On appeal, the mother argued that the injunction "went beyond any relief requested" by the father, who testified that the mother should be allowed supervised visitation. *Id.* The court of

---

[2]     In *Leithold v. Plass*, 413 S.W.2d 698 (Tex. 1967), the Supreme Court held that "a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child." 413 S.W.2d at 701. That statement has been frequently repeated by courts of appeals, including this one, for the proposition that a "suit invoking the trial court's jurisdiction with respect to custody and control of a child also vests the court with decretal powers in all relevant custody, control, possession, and visitation matters, even in the absence of a pleading requesting the relief." *See, e.g.*, *In re K.P.*, No. 01-00-01115-CV, 2001 WL 1168579, at *3 (Tex. App.—Houston [1st Dist.] Oct. 4, 2001, no pet.) (mem. op.) (not designated for publication) (holding that father was not required to separately plead for child support when his pleadings sought a change from joint managing conservatorship to sole managing conservatorship). However, in *Baltzer v. Medina*, 240 S.W.3d 469 (Tex. App.—Houston [14th Dist.] 2007, no pet.), the Fourteenth Court of Appeals held that because the Texas Rules of Civil Procedure apply to the filing of a petition to modify the parent-child relationship, *see* TEX. FAM. CODE § 156.004, the trial court's judgment must conform to the pleadings. 240 S.W.3d at 476. In a footnote, the court of appeals explained that *Leithold* predated the enactment of the Texas Family Code, and that it did not "hold that the civil procedure rules regarding pleadings and judgments do not apply to cases involving custody of minor children," and that even if it had so held, the enactment of the Texas Family Code would supersede *Leithold*. *Id.* at 476 n.5.

appeals considered the evidence regarding the mother's mental illness; her erratic, disruptive, and uncontrolled behavior; and "her unwillingness to get the help she needs" and concluded that the trial court did not abuse its discretion in imposing the injunction, without expressly analyzing whether the issue was tried by consent. *Id.*

In *MacCallum v. MacCallum*, 801 S.W.2d 579 (Tex. App.—Corpus Christi 1990, writ denied), the court restricted the father from allowing his eight- and nine-year-old sons from operating farm equipment or being involved in the mixing or application of herbicides, pesticides, or other farm chemicals during any period of visitation until they were 14 years old. *MacCallum*, 801 S.W.2d at 586. The father challenged this restriction on appeal on the basis the mother had not pleaded for such relief. *Id.* The court of appeals held: "Pleadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings." *Id.* The court also noted that a trial court may impose conditions on visitation in the absence of a pleading and that the "condition in question in this case does not concern or limit access to or possession of the child." *Id.* Because there was evidence from which the court could have concluded that the restricted activities were not in the best interest of minor children, the court of appeals upheld the condition. *Id.* at 587.

11

In *Peck v. Peck*, 172 S.W.3d 26 (Tex. App.—Dallas 2005, pet. denied), the father appealed an injunction entered in a divorce decree that prohibited him, when in possession of his child, from having an overnight visit with any woman with whom he had an intimate or dating relationship. *Peck*, 172 S.W.3d at 28. The father first argued that the injunction was unsupported by the mother's pleadings. *Id.* at 35. Relying on *MacCallum*, the court overruled this argument stating that "the trial court has discretion to place conditions on parents' visitation even if the pleadings do not request such conditions." *Id.*

The Tyler Court of Appeals went further in *In re B.J.H.-T.*, No. 12-09-00157-CV, 2011 WL 721511 (Tex. App.—Tyler 2011, pet. denied) (mem. op.), affirming injunctions not specifically related to visitation with the child. In that case, the mother applied for a protective order against the father, and although the court denied the protective order, it sua sponte imposed an injunction limiting "their interactions with one another" because of their "inability to communicate with civility" and "because doing so was in the child's best interest." *In re B.J.H.-T.*, 2011 WL 721511 at *2. The trial court also ordered both parents to "attend parent education classes, write book reports, designate someone else to be present to exchange the child, communicate by certified mail and regular United States mail," and it ordered the father to "attend group counseling." *Id.* The court of appeals overruled the father's issues contending that the trial court granted relief

12

that was not requested by the pleadings, providing three reasons for its ruling. *Id.* First, the injunction did not restrict the father's access to or possession of his child. *Id.* at \*2. Second, the evidence showed that the parents were "combative and that their acts and attitudes tend[ed] to perpetuate the conflicts between them." *Id.* Third, the father "had notice of the acrimonious relationship he has with his son's mother and that the court has jurisdiction to order them to make adjustments that are in the child's best interest." *Id.* Therefore the court of appeals concluded that no pleadings were necessary for the court to impose additional limitations. *Id.*

Our sister court recently declined to follow *B.J.H.-T.*, holding instead that a court's judgment in a suit affecting the parent-child relationship must conform to the pleadings and that issues tried by consent will be treated as if raised by the pleadings. In *Flowers v. Flowers*, 407 S.W.3d 452 (Tex. App.—Houston [14th Dist.] 2013, no pet.), the father appealed the trial court's order modifying the parent-child relationship and removing the geographic restriction on the mother's exclusive right to determine the primary residence of the children. *Flowers*, 407 S.W.3d at 457. The father argued that the court erred in doing so because the mother did not request such relief in her pleadings and the issue was not tried by consent. *Id.* The Fourteenth Court acknowledged that reviewing courts must construe the pleadings liberally "to contain any claims that reasonably may be inferred from the specific language used . . . even if an element of a claim is not

specifically alleged." *Id.* at 457–58 (citing *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354–55 (Tex. 1995)). But because the "petition must give fair and adequate notice of the claims being asserted," a court of appeals may not "use a liberal construction of the petition as a license to read into the petition a claim that it does not contain." *Id.* Because the mother did not plead for removal of the geographical restriction and there was no evidence of trial by consent, the court of appeals concluded that the trial court abused its discretion by sua sponte removing the restriction. *Id.* at 458.

Likewise, in *Messier v. Messier*, 389 S.W.3d 904 (Tex. App.—Houston [14th Dist.] 2012, no pet.), the Fourteenth Court acknowledged that because the best interests of the child are the principal concern in child custody cases, technical pleading rules in such cases are of reduced significance. *Messier*, 389 S.W.3d at 907.[3] But the court noted that the pleadings must nevertheless "notify the opposing

---

[3]     For this proposition, *Messier* also relied on *Cain v. Cain,* No. 14–07–00114–CV, 2007 WL 4200638, at *4 (Tex. App.–Houston [14th Dist.] Nov. 29, 2007, no pet.) (mem. op.) (holding that granting joint managing conservatorship not an abuse of discretion when issue raised by mother's pleadings but not by father's); *Halla v. Halla,* No. 14–06–01126–CV, 2007 WL 2367600, at *2 (Tex. App.—Houston [14th Dist.] Aug. 21, 2007, no pet.) (mem. op.) (holding that issues of child support, access, and school attendance were not pleaded but were tried by consent); and *Sanchez v. Sanchez*, No. 04-06-00469-CV, 2007 WL 1888343, at *5 (Tex. App.—San Antonio 2007, pet. denied) (mem. op.) (holding that an injunction against harsh discipline was not an abuse of discretion because it was consistent with mother's pleadings alleging father's pattern of physical abuse and with

14

party of the claim involved." *Id.* In *Messier*, the trial court in its final divorce decree imposed permanent injunctions on the mother "primarily concerning international travel with the children of the marriage." *Id.* at 905. The father's pleadings asked the court "to determine whether there is a risk of international abduction of the children by [the mother] and to take such measures as are necessary to protect the children." *Id.* at 906. Evidence at trial included testimony about the mother's mental-health problems and desire to leave the country with the children. *Id.* Although the court did not find a potential risk of international abduction of the children by the mother, it did find that restrictions on her ability to possess their passports and travel beyond Texas with them were in the best interest of the children. *Id.* at 906–07. When the mother argued on appeal that the travel restrictions were not raised by the father's pleadings, the court of appeals liberally construed the father's pleadings which "raised the issue of international travel with the children" and requested general relief and "such measures as are necessary to protect the children." *Id.* at 908. The court of appeals held that this was a clear reference to nonmonetary, injunctive relief and thus the father's pleadings supported the injunction. *Id.*

Another aspect of the diminished significance of technical pleading rules, as applied to this case, is the question of what must be pleaded to support a court's

---

her general prayer for relief in the form of an order to protect the safety and well-being of the children).

15

grant of injunctive relief. Ordinarily, a movant seeking a permanent injunction must plead and prove (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) absence of an adequate remedy at law. *See, e.g.*, *In re Hardwick*, 426 S.W.3d 151, 159 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding). Some courts of appeals have held that the traditional requirements for permanent injunctions "are not strictly applicable in the child custody context." *Messier*, 389 S.W.3d at 908. The *Messier* court observed that "courts routinely grant permanent injunctions" in child custody cases "consistent with the best interests of the children." *Id*. *Messier* relied in part on *Peck*, in which the father raised an argument that an injunction prohibiting an overnight visit with a girlfriend was improper because the mother did not offer sufficient evidence to support the traditional requirements for obtaining a permanent injunction. *Id.* (citing *Peck*, 172 S.W.3d at 35). The *Peck* court noted that the Family Code "never mentions permanent injunctions," but it dispenses with formal prerequisites in the context of temporary orders, *see* TEX. FAM. CODE § 105.001, and thus the *Peck* court held that the trial court had not abused its discretion. *Peck*, 172 S.W.3d at 36

Conversely, the Fort Worth Court of Appeals has held that because the Family Code "does not expressly address permanent injunctions in suits affecting the parent-child relationship," the usual rules applicable to permanent injunctions in civil cases apply. *In re A.A.N.*, No. 02-13-00151-CV, 2014 WL 3778215 at *1

16

(Tex. App.—Fort Worth July 31, 2014, no pet.) (mem. op.). In *A.A.N.*, both parents filed motions to modify the parent-child relationship and the mother also sought a temporary restraining order and a protective order. *Id.* The trial court denied both parents' motions but imposed an injunction prohibiting contact between the father's girlfriend and the children and prohibiting both parents from having unrelated members of the opposite sex stay overnight during their periods of possession. *Id.* On appeal the father argued that the mother did not plead for such broad injunctive relief. *Id.* The court of appeals agreed that the mother's pleadings did not seek a request for a permanent injunction. *Id.* at \*2. The court of appeals reversed, holding that the injunction was not supported by the evidence because there was no proof of imminent harm or irreparable injury. *Id.*

Considering the aforementioned authorities, we conclude that in suits affecting the parent-child relationship, a trial court may not grant injunctive relief against a party unless that party had notice by way of the pleadings or the issue was tried by consent. *See* TEX. FAM. CODE § 156.004; TEX. R. CIV. P. 301; *Flowers*, 407 S.W.3d at 457 & n.3; *Baltzer*, 240 S.W.3d at 476 & n.5. A court should read the pleadings liberally and not foreclose the grant of injunctive relief for lack of pleading formality so long as the pleading was sufficient to inform the party to be enjoined of the substance of the issue. *See Messier*, 389 S.W.3d at 907. In matters concerning custody, control, possession, and visitation, the trial court's

17

foremost consideration is the best interest of the child, and the court has discretion to fashion orders including injunctive relief that are in the best interest of the child and consistent with the allegations, general prayers for relief, and evidence, without the need for strict proof of the existence of a wrongful act, imminent harm, irreparable injury, and the absence of an adequate remedy at law. *See Leithold*, 413 S.W.2d at 701; *Messier*, 389 S.W.3d at 907; *Peck*, 172 S.W.3d at 35; *MacCallum*, 801 S.W.2d at 587. But in cases in which the injunctive relief sought or granted does not concern custody, control, possession, or visitation of a child, the party seeking such relief must show his entitlement to a permanent injunction as in any civil case. *See* TEX. FAM. CODE § 156.004; *A.A.N.*, 2014 WL 3778215, at *1–2.

With these legal principles in mind, we turn to the parties' specific arguments about the injunctions imposed in this case.

## I. Injunction against mother coming within 200 yards of father's place of employment

King challenges the injunction restricting her from coming within 200 yards of Lyons's place of employment as not supported by pleadings or evidence. Lyons agrees that the trial court erred in imposing a permanent injunction against King coming within 200 yards of his place of employment because he did not plead for such relief and it was not tried by consent. He concedes that he did not plead for an injunction against King coming within 200 yards of his place of employment. He also concedes that nothing was mentioned at trial about restricting King from his

18

place of employment. He states, "Even under the most liberal construction of the pleadings there was no mention at the trial in this case concerning limiting either party from coming near the other party's place of business." Lyons testified that he worked from his residence, and King testified that she had never been there.

We have reviewed the record, and we agree with the parties that Lyons did not include a request for such an injunction in his pleadings and that there is no evidence of trial of the issue of an injunction barring King from coming within 200 yards of Lyons's place of employment. We sustain King's first issue insofar as she argues that the court abused its discretion in enjoining her from coming within 200 yards of Lyons's place of employment. *See Guillory*, 442 S.W.3d at 690.

## II. Injunction against father coming within 200 yards of mother's place of employment

Similarly Lyons challenges the injunction restricting him from coming within 200 yards of King's place of employment as not supported by pleadings or evidence. Lyons contends that this was not discussed at trial, it is not in the child's best interest, and there are "no grounds" for it.

King does not argue that a liberal construction of her pleadings would support the place-of-employment injunction. Rather, she contends that it was tried by consent. To support this argument, she relies on evidence that Lyons spoke negatively about her to one of his neighbors, he spoke harshly to her at the child's school, he insinuated she was engaged in an inappropriate relationship with her

19

boss, and he had a history of confrontational behavior when exchanging possession of the child. She also relies on evidence that Lyons was uncooperative in regard to scheduling activities related to the child, sent her multitudinous text messages, and was disrespectful to their daughter's teacher.

The evidence that King relies upon is not exclusively relevant to the imposition of an injunction against Lyons approaching her place of employment. It is general evidence of their acrimonious relationship and of confrontations that they have had in locations removed from her place of employment, such as her residence and the child's school, or by electronic communication. Because the evidence she relies upon is also relevant to other issues raised by the pleadings, such as her request for Lyons to pick up and return the child at the curb of her residence, it is not evidence of trial of the place-of-employment injunction. *See Sage St. Assocs.*, 863 S.W.2d at 446.

In addition, there is nothing in the record to show that "both parties understood the issue was in the case." *Case*, 184 S.W.3d at 771. Lyons testified that he worked as a health-care consultant from his house; King said she worked as legal counsel at UTMB. Lyons argues that the injunction would have a negative impact on his ability to work as a health-care consultant, yet because he lacked notice of this issue, he put on no evidence to that effect at trial. Nothing in the

20

record shows how or why the place-of-employment injunction against Lyons would be in the best interest of A.X.L.

Finally, this place-of-employment injunction does not relate directly to custody, control, possession, or visitation, and it would impact Lyons even during times when he did not have possession of A.X.L. While there is some evidence that Lyons accused King of having an inappropriate relationship with her boss, there is no evidence of any wrongful act that Lyons committed against King at or near her place of employment. Nor is there evidence of any of the other grounds for entitlement to a permanent injunction in a civil case. Considering all of these factors, we conclude that there is no evidence of trial of the place-of-employment injunction. *See Sage St. Assocs.*, 863 S.W.2d at 446. Accordingly, the trial court erred by imposing it. We sustain Lyons's first issue. Having sustained this issue, we need not address Lyons's third issue, which presents an alternative reason for invalidating the place-of-employment injunction. *See* TEX. R. APP. P. 47.1.

## III. Injunction against father coming within 200 yards of mother's residence

Lyons contends that King did not plead for an injunction barring him from coming within 200 yards of her home, the issue was not tried by consent, and there is no evidence to support it. King argues that the issue was tried by consent because she introduced evidence that Lyons has been angry and confrontational in his communications with her, sometimes while exchanging the child at her

21

residence. King argues that her evidence showed that she simply did not want him at the door. Notably, she does not argue that the court had discretion to impose this injunction sua sponte under its general discretion to regulate matters concerning custody, control, possession, and visitation in suits affecting the parent-child relationship.

King's "First Amended Petition to Modify Parent-Child Relationship" was her live pleading at trial. It does not include a request that the court impose a permanent injunction barring Lyons from coming within 200 yards of her residence. It does, however, include a request that Lyons be required to pick up and drop off A.X.L. at the curb of her residence. The evidence that King identifies as relevant to the permanent injunction, i.e., Lyons's history of confrontational behavior with her and his prior actions in returning the child after periods of possession, is not distinguishable from evidence that was relevant to her pleaded request that Lyons pick up and return the child to the curb of her residence. As we have previously stated, when evidence at trial is relevant to an issue that has been pleaded, it will not be regarded as evidence of trial of an unpleaded issue. *See Sage St. Assocs.*, 863 S.W.2d at 446.

No evidence was introduced that would specifically pertain to such an injunction or the impact it would have on Lyons as the restrained party. No evidence was adduced as to the impact such a restriction would have on A.X.L. or

22

if it would be in her best interest. Because the evidence King relies upon was relevant to an issue raised by the pleadings, that evidence does not demonstrate that both parties understood that the permanent injunction was an issue in the case. *See Case*, 184 S.W.3d at 771. Because there is no evidence of trial of this issue, we conclude that it was not tried by consent. *See Sage St. Assocs.*, 863 S.W.2d at 446. We hold that the court erred by granting injunctive relief that was not included in the pleadings or tried by consent. *See* TEX. R. CIV. P. 67 & 301; *Cunningham*, 660 S.W.2d at 813; *Roark*, 813 S.W.2d at 495. We sustain Lyons's second issue.

## IV.   Injunction against mother coming within 200 yards of father's residence

King argues that the trial court abused its discretion in imposing a permanent injunction prohibiting her from coming within 200 yards of Lyons's residence because it is not supported by the pleadings, the issue was not tried by consent, and because it is not supported by sufficient evidence.

Lyons concedes that he did not include this request for injunctive relief in his pleading, and he does not argue that it was tried by consent.[4] Still he argues that

---

[4]   As discussed above, this issue was not tried by consent. Nothing in the record indicates trial of this issue. King testified that she had never been to Lyons's residence. And in this court Lyons argues that the injunction against King coming within 200 yards of his place of employment is unsupported by evidence. Lyons's place of employment is his residence. Therefore, his argument about the lack of evidence to support the injunction against King coming within 200 yards of his place of employment would logically apply

23

this injunction was rationally related to the child's best interest and that because technical pleading rules are relaxed in cases such as these, the trial court did not abuse its discretion in imposing this injunction. He further argues that the relief he requested was broader than the injunction because "he did not want the parties to communicate directly." He reasons that if King showed up on his doorstep he would have to communicate directly with her.

In essence, Lyons's argument is that because of the nature of this case, the court may impose an injunction in the absence of pleadings requesting that relief. We have analyzed the relevant case law in this area and concluded that in suits affecting the parent-child relationship, a trial court may not grant injunctive relief against a party unless that party had notice by way of the pleadings or the issue was tried by consent. *See* TEX. FAM. CODE § 156.004; TEX. R. CIV. P. 301; *Flowers*, 407 S.W.3d at 457 & n.3; *Baltzer*, 240 S.W.3d at 476 & n.5. We also have acknowledged the wide discretion the trial courts have in fashioning conditions to serve the best interest of the child in matters concerning custody, control, possession, and visitation. *See Leithold*, 413 S.W.2d at 701; *Messier*, 389 S.W.3d at 907; *Peck*, 172 S.W.3d at 35; *MacCallum*, 801 S.W.2d at 587. This is not that sort of case. The problematic aspect of this injunction is that it does not directly relate to custody, control, possession, and visitation, but instead it relates

with equal force to the injunction prohibiting King from coming within 200 yards of his residence.

24

to keeping the parties physically separated and restrains their conduct in ways that have no relation to the child. As such, the more deferential standards that we ordinarily apply in cases in which the trial court enjoys broad discretion to fashion remedies to advance the best interest of the child are inapplicable. *Cf.* TEX. FAM. CODE § 156.004; *A.A.N.*, 2014 WL 3778215, at *1. Moreover, Lyons's pleading simply does not mention anything pertaining to a desire to keep King away from his residence, and we may not "use a liberal construction of the petition as a license to read into the petition a claim that it does not contain." *Flowers*, 407 S.W.3d at 458. Because this injunction was not supported by the pleadings and did not relate to custody, control, possession, or visitation, the trial court abused its discretion in imposing it. TEX. FAM. CODE § 156.004; TEX. R. CIV. P. 301; *Flowers*, 407 S.W.3d at 457 & n.3; *Baltzer*, 240 S.W.3d at 476 & n.5.

## Conclusion

We reverse the trial court's order, in part, and vacate the portion of the order imposing the mutual permanent injunctions on the parents prohibiting each parent from coming within 200 yards of the other parent's residence and place of employment.



                                                       Michael Massengale
Justice

Panel consists of Justices Jennings, Sharp, and Massengale.