# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO.  03-21-00130-CV

**Tracen Gardner, Appellant**

**v.**

**Katherine McKenney, Appellee**

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-09-004721, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Tracen Gardner appeals from the trial court's order modifying the parent-child relationship.  Gardner and Katherine McKenney are the parents of two children who were twelve and thirteen at the time of trial.  Gardner contends that the trial court lacked the authority to enjoin him from renting out the children's bedrooms in their absence and that the evidence was insufficient to support the injunction.  For the following reasons, we affirm the trial court's order.

### BACKGROUND

The parties were divorced in 2010 per an agreed divorce decree appointing them as joint managing conservators and awarding McKenney the exclusive right to designate the children's primary residence, each parent having specified possession periods.  In 2011 Gardner filed a motion to modify the decree and—after the parties mediated the dispute—the court rendered an agreed order granting the parties equal possession periods and specifying that neither parent conservator has the exclusive right to establish the children's primary residence.  In 2017

Gardner again filed a motion to modify the parent-child relationship, but the record does not reflect the outcome of that motion.

In 2019, McKenney filed a petition to modify the parent-child relationship, asking the court to appoint her as the conservator with the right to designate the children's primary residence, increase the child support Gardner must pay, appoint a therapist for the older child, and render an order "preclud[ing] [Gardner] from renting out the children's bedrooms at their primary residences as short term rentals." Gardner filed a combined answer, counter-petition, and request for temporary orders. As the cause pended, the trial court rendered various temporary orders and on October 5–6, 2020, conducted a bench trial on the parties' petitions.

McKenney, Gardner, and the parties' family therapist, Dr. Kelley Baker, testified, and about thirty exhibits, including an accounting of Gardner's 2019 Airbnb income, were admitted. McKenney testified that the older child, K.L.G., was currently in a "partial hospitalization program" at a "mood and anxiety" center. Shortly before her admission there, K.L.G. had taken "a bunch of pills" and had been caught vaping by her mother. After K.L.G. spent the night in the emergency room due to the pills, McKenney and Gardner discussed options for her treatment. Gardner opposed K.L.G. continuing therapy with her individual therapist but agreed to the partial-hospitalization program.

McKenney explained that K.L.G. had been having problems at school for a couple of years, including getting easily distracted, having outbursts, and being rude to other students and teachers. She had been suspended for having an "altercation" with another student and had had several in-school suspensions. Most mornings she would be late to her classes because she went directly to the campus police office for a "cooldown period" upon arriving at school. During summer 2019, two trips that Gardner took with the children had not "gone well,"

2

as admitted by Gardner to McKenney and related to her by the children, including incidents such as Gardner giving K.L.G. the "middle finger" on an airplane while mouthing to her "fuck off" and "fuck you" and Gardner's dropping the children off in the dark several blocks from their lodgings and telling them to find their own way back. In late summer 2019, K.L.G. began refusing to go to Gardner's house and attending his possession periods; at some point, with the help of therapy, that relationship had improved and K.L.G. was again attending the scheduled possession periods.

In fall 2019, McKenney explained, K.L.G. began seeing an individual therapist. K.L.G.'s sessions with her individual therapist were a "step in the right direction" and the child looked forward to them, but the sessions stopped in April 2020 after Gardner stopped paying his half share of the fees. Gardner had also taken two significant trips—one to Africa and the other a two-week motorcycle trip—with only the parties' son, W.M.G.; McKenney believed this exclusion of K.L.G. by Gardner was "detrimental to her personal thoughts about herself." Additionally, beginning at least by March 2020, K.L.G. had begun "cutting herself," for which McKenney took her to the hospital to be evaluated.

McKenney testified that over the last year, W.M.G. had had some "issues at school, off and on," including refusing to do his work and not participating in class. She explained that he can feel overwhelmed in a large group and when beginning a new assignment. He was having some difficulty with reading comprehension and essay writing and, like K.L.G., was receiving a "504 accommodation" at school for a learning disability.[1]

---

[1] Section 504 of the Rehabilitation Act of 1973 is an antidiscrimination provision that protects disabled individuals. *See* 29 U.S.C. § 794(a). McKenney explained that the school's dyslexia specialist identified K.L.G. as having dyslexia, while acknowledging that she was "on the border," and McKenney explained that W.M.G.'s disability was "about the same."

During her testimony, McKenney also explained why she was asking for an order that would prohibit Gardner from renting out the children's bedrooms while they were not in his possession: she disagreed with strangers sleeping in the children's beds, there were no locks on closets or cabinets in the rooms, the COVID-19 pandemic was ongoing, strangers might leave behind cameras or take things from the bedrooms, and K.L.G. had noticed that her things had been "rifled through." McKenney believed the issue of strangers staying in her room was important to K.L.G.

Gardner testified that K.L.G. was very "distressed" and has "mental health issues," evidenced by her self-harm and suicide attempt, and he attributed her issues to hormones and McKenney. Specifically, Gardner believed that McKenney was unable to connect with K.L.G. because McKenney was not highly educated, did not have the capacity for "advanced decision-making," and had allowed K.L.G. to have a smartphone despite the parties' agreement and the advice of the family therapist. He stated that he did not believe any of his behavior had contributed to K.L.G.'s mental-health or behavioral issues. Gardner testified that K.L.G. had told him it "does not bother" her that he rents out her bedroom to strangers when she is not there. He said he locks up the children's "personal and private belongings" in his closet during rental periods and has told the children they are "welcome" to lock up their things themselves. He also stated that the children like the "extra money" he gives them for renting out their bedrooms.

Dr. Baker testified that she believes K.L.G. suffers from a deep level of insecurity, which makes her dependent on external sources for approval and sometimes leads to attention-seeking behavior and self-harm. She believes that individual therapy is important for K.L.G. She stated that K.L.G. was aware there was a lawsuit between her parents and that it is stressful for an adolescent to know that they are "in the middle of a lawsuit between their

4

parents." She also explained that part of the conflict between Gardner and McKenney was that they did not have "similar expectations and rules" at each of their homes.

The trial court rendered its Order in Suit to Modify Parent-Child Relationship on February 25, 2021. Among other provisions, the order awarded McKenney the exclusive right, after meaningful consultation with Gardner, to make educational, medical, dental, psychological, and psychiatric decisions regarding the children and specified that neither parent has the exclusive right to determine the children's primary residence. In a section entitled "Other Orders," the order specified that Gardner is "ORDERED not to rent out the children's rooms" in his residence. Although Gardner requested findings of fact and conclusions of law, the record does not reflect that the trial court made any or that Gardner filed a notice of past-due findings and conclusions. He filed a "Motion for Partial New Trial & Motion to Reopen, Modify, or Correct the Record" in which he took issue solely with the amount of child support he was ordered to pay McKenney. Thereafter Gardner timely perfected this appeal.

## DISCUSSION

In one issue with two sub-parts, Gardner argues that (1) the trial court did not have the authority to enjoin him from renting out the children's bedrooms when they are not in his possession and (2) there is no evidence to support the trial court's implied finding that the room-rental injunction is in the children's best interest. We address only the latter argument, as Gardner did not preserve the former for our review by timely request, objection, or motion made to the trial court.[2] *See* Tex. R. App. P. 33.1; *Nasr v. Whitehead*, No. 05-20-00766-CV, 2022 WL

---

[2] Regarding the trial court's injunction order, we note that the Texas Family Code provides that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of the child," Tex. Fam.

3593346, at *4 (Tex. App.—Dallas Aug. 23, 2022, no pet.) (mem. op.) (determining that appellant had not preserved issue of trial court's authority to enter order of dismissal by not raising matter with trial court); *In re S.V.*, 599 S.W.3d 25, 40 (Tex. App.—Dallas 2017, pet. denied) (holding that, by not raising issue in trial court, father failed to preserve for appellate review his complaint that injunction in SAPCR order violated his right to free speech).

As for Gardner's contention that there was no evidence to support the trial court's room-rental order, we review the order for an abuse of discretion. *See Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.); *Zeifman v. Michels*, 212 S.W.3d 582, 587–88 (Tex. App.—Austin 2006, pet. denied). A trial court may modify a prior conservatorship, possession, or access order if the modification is in the child's best interest and a parent's or child's circumstances have materially and substantially changed since the order was rendered. *See* Tex. Fam. Code § 156.101(a)(1). When, as here, a trial court does not make findings of fact and conclusions of law, we imply all necessary fact findings in support of the judgment and supported by the record. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Gardner takes issue only with the trial court's implied finding that the room-rental order was in the children's best interest, arguing that there is "no evidence" to support it.

Mindful that the trial judge is "best able to observe and assess the witnesses' demeanor and credibility" and sense the "forces, powers, and influences" that may not be apparent from merely reading the record on appeal, *see Coburn*, 433 S.W.3d at 823, we conclude that there is sufficient evidence from which the trial court could exercise its discretion, and

Code § 154.002, and that "except as otherwise provided by this title, proceedings shall be as in civil proceedings generally," *id.* § 105.003(a). Texas courts have construed these provisions as providing the trial court the authority to issue permanent injunctions. *See, e.g.*, *King v. Lyons*, 457 S.W.3d 122, 126–30 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

that the court's exercise of discretion in rendering the room-rental provision of the order was reasonable, *see id.*. In a suit to modify the parent-child relationship, the appellate court uses the well-known *Holley* factors to ascertain the best interest of the child, and if there is sufficient evidence to support an implied best-interest finding, there is no abuse of discretion. *See Mauldin v. Clements*, 428 S.W.3d 247, 268–71 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see also Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976) (listing nine non-exhaustive factors courts may consider when determining best interest, including children's desires, children's current and future emotional and physical needs, and stability of home).

McKenney testified that she believed the issue of strangers staying in K.L.G.'s bedroom and sleeping in her bed when she was not there was important to the teenager, who had noticed that her things had been rifled through when she was gone. McKenney explained that the children's closets and cabinets had no locks and that she was concerned for the physical and emotional well-being of her children based on the risks associated with the ongoing COVID-19 pandemic and the possibility that strangers might leave cameras in the bedrooms or take things. There was considerable evidence about K.L.G.'s ongoing mental and emotional issues, for which she was currently undergoing partial hospitalization and about which the parties did not always agree on the best course of treatment. Gardner confirmed that he had rented out the children's rooms for nearly 100 days in a single year—the same year that encompassed K.L.G.'s suicide attempt and many behavioral concerns as well as estrangement between K.L.G. and Gardner. While Gardner testified that the room rentals did not "bother" K.L.G., that the children know they are "welcome" to lock anything up in his closet that they do not want left out when he rents out their rooms, and that the children enjoy the "extra money" he gives them for renting out their rooms, the trial court could have found such testimony not credible or outweighed by the

7

teenagers' needs for stability in each of their two homes, to include not having to remember to lock things up each time they transfer to their mother's home, especially considering K.L.G.'s significant and ongoing emotional and mental issues. The trial court also could have reasonably inferred that the parent-child relationship and the children's awareness of the parties' custody disputes constrained the children from telling their father how they felt about having their rooms rented out.

Furthermore, Gardner's testimony indicated a tendency to blame McKenney for K.L.G.'s serious psychological issues or downplay them as being due to "hormones," which the trial court could reasonably have found reflected an inability or unwillingness to put the children's interests first or acknowledge their emotional needs. Evidence also showed that K.L.G. and W.M.G. had experienced significant changes within both their homes since their parents divorced—McKenney had remarried, had a child, and divorced and Gardner had broken up with a significant other who had spent much time at Gardner's home with K.L.G. and W.M.G. and around whom Gardner tended to pay less attention to the children and acted more "strict." In light of all the evidence and considering that stability is a paramount concern in suits concerning the parent-child relationship, *see Rios v. Texas Dep't of Fam. & Protective Servs.*, No. 03-11-00565-CV, 2012 WL 2989237, at *9 (Tex. App.—Austin July 11, 2012, no pet.) (mem. op.), we cannot conclude that the trial court had insufficient evidence to exercise its discretion or that it exercised its discretion unreasonably in finding that it was in the children's best interest that Gardner not rent out their bedrooms when they were not in his possession. We overrule Gardner's issue.

8

## CONCLUSION

We affirm the trial court's February 24, 2021 order modifying the parent-child relationship.

_____

Thomas J. Baker, Justice

Before Justices Baker, Smith, and Theofanis

Affirmed

Filed:   February 15, 2023