Opinion issued April 23, 2019



In The

# Court of Appeals

### For The

# First District of Texas

———————————

### NO. 01-17-00415-CV

———————————

## IN THE INTEREST OF I.M.M. AND K.R.M., CHILDREN

---

### On Appeal from the 310th District Court
### Harris County, Texas
### Trial Court Case No. 2007-50042

---

### MEMORANDUM OPINION

In this SAPCR suit, Gary, the father of I.M.M. and K.R.M., appeals the trial court's final order that modified conservatorship, visitation, and child support. We affirm.

### Background

Gary and Arlene divorced in 2008 in the 310th District Court of Harris County. Both are attorneys. The Agreed Final Decree of Divorce was signed by the

Honorable Lisa Millard, presiding judge of the 310th Judicial District Court. Gary and Arlene were appointed joint managing conservators of their two daughters, I.M.M. and K.R.M., and Gary was given the exclusive right to designate the children's residence and the sole right to make decisions concerning the children's education. Arlene, who was temporarily leaving Texas to attend a Masters program, was ordered to pay Gary monthly child support.

An April 7, 2011 order on Gary's and Arlene's respective motions to modify continued their status as joint managing conservators, modified Arlene's request to increase her possession and access (giving Gary and Arlene approximately 50/50 possession time), increased Arlene's child support to Gary, and denied Arlene's request that she be given the exclusive right to designate the children's primary residence.

On January 28, 2016, Gary filed another petition in the 310th Judicial District Court seeking to modify the parent-child relationship. Gary's petition asserted that the 310th District Court had continuing, exclusive jurisdiction of the suit, sought to enjoin Arlene from discussing educational decisions with the children, and requested a judicial determination on whether Arlene was a risk for the international abduction of the children (Arlene is a native of the Phillipines).

Arlene filed a counter-petition seeking, among other things, the joint right to make educational decisions, permission to travel with the children internationally

during her periods of possession, authority to select a counselor or therapist for the children, and a decrease in child support.

On July 14, 2016, just a few days before Gary's summer possession began, Arlene filed an "Emergency Motion for Temporary Restraining Order and Request for Emergency Hearing for Temporary Orders." By this time, Gary had remarried, and his wife had children from a previous relationship, including her adult son D.S. In her affidavit accompanying the emergency motion, Arlene stated that her and Gary's eldest daughter I.M.M. had recently disclosed on her fourteenth birthday at a church meeting that she had been secretly "sleeping" with D.S., her twenty-year-old stepbrother (a member of Gary's household) since the beginning of the 2015 school year.[1] According to Arlene's affidavit, I.M.M. said that she and D.S. had been caught by her stepmother one night in April 2016 and that her stepmother informed Gary, who allowed D.S. to remain in the household.

Child Protective Services was contacted, and a caseworker proposed a safety plan that prohibited I.M.M. and K.R.M. from having contact with D.S. According to Arlene's affidavit, I.M.M. told Arlene that her father and stepmother were very upset with her for disclosing her relationship with D.S. Arlene's affidavit expressed her concern for the physical safety and emotional welfare of I.M.M. and K.R.M. while in Gary's possession because of his failure to protect the children by

---

[1] Arlene's affidavit states that Gary and his wife had been asked by I.M.M. to attend this church meeting, but they did not attend.

3

allowing D.S.'s sexual abuse of I.M.M. to take place and by knowingly allowing D.S. to remain in the household after learning of the sexual abuse. Arlene also expressed concern for I.M.M.'s substantial risk of mental harm from the verbal and mental abuse from her father and stepmother as a result of I.M.M.'s disclosure.

Arlene's emergency motion requested the removal of the children from Gary's possession until the completion of the CPS investigation or until a hearing could be held, the denial of Gary's access to the children or only supervised visitation, the preparation of a child-custody evaluation, and a psychological evaluation of the children.[2] Arlene also sought the appointment of an amicus attorney.

An associate judge heard Arlene's emergency motion with counsel for Arlene and Gary present, signed her proposed temporary restraining order, and appointed Amy Lacy as amicus attorney. Gary then filed a motion to dissolve the TRO, and the associate judge denied it after a hearing.

In August 2016, the associate judge held an evidentiary hearing over two days on Arlene's request for temporary orders. Evidence included I.M.M.'s

---

[2]  Gary's attorney stated on the record that the CPS caseworker told him that her recommendation was to close the investigation, claiming that "CPS often dismisses the claim" when someone in a custody case gets reported. Arlene's attorney stated that one of the reasons that CPS closes cases is that there is a pending court case in which the parents have lawyers and there is an amicus attorney, and CPS does not want to be involved in it. The amicus attorney echoed what the two attorneys stated. No direct evidence of CPS's decisionmaking is in the record.

handwritten journal that stated in part: "So night after night I would sleep in his room or he would sleep in mine and each time one of us would escape by morning." After the hearing and after denying Gary's objection to an interview of I.M.M., the associate judge interviewed I.M.M. in chambers with the amicus attorney present.[3] Thereafter, the associate judge made temporary orders that, among other things, restricted Gary's possession of and access to the children, eliminated overnight visits, and enjoined the parties from allowing the children to have any contact with D.S. The temporary orders also gave Arlene the exclusive right to designate the children's residence, terminated Arlene's child-support obligation, and ordered that I.M.M. undergo counseling.

---

[3] In the same time frame as the hearing before the associate judge, Gary sued the associate judge and the district judge in federal court. *See Machetta v. Moren*, No. 4:16-CV-2377, 2017 WL 2805192 (S.D. Tex. Apr. 13, 2017), *adopted*, 2017 WL 2805002 (S.D. Tex. June 28, 2017), *aff'd*, 726 F. App'x 219 (5th Cir. 2018) (per curiam). The federal district court granted the two judges' motions to dismiss, and the Fifth Circuit affirmed the federal district court's award of attorney's fees to the two judges on the ground that Gary's suit was frivolous. 726 F. App'x at 221. In a separate federal suit, Gary's wife and her two children sued the district judge, and that case likewise was dismissed on the judge's motion. *See Machetta v. Millard*, No. 4:17-CV-00571, 2018 WL 1172654 (S.D. Tex. Mar. 5, 2018). Gary also sued the district judge in state court under the Texas Religious Freedom Restoration Act for violating his religious rights, and the dismissal of that case was affirmed by this court. *See Machetta v. Millard*, No. 01-17-00857, 2018 WL 5289336 (Tex. App.—Houston [1st Dist.] Oct. 25, 2018, pet. denied) (mem. op.). And not long before the final trial in this case, Gary filed an original proceeding for mandamus relief in this court in January 2017, which was denied. *See In re Machetta*, No. 01-17-00009, 2017 WL 343604 (Tex. App.—Houston [1st Dist.] Jan. 23, 2017, orig. proceeding) (mem. op.).

Gary then requested a de novo hearing on the temporary orders, and it was held over four days in October 2016. The trial court appointed Arlene as temporary sole managing conservator and gave her the exclusive right to designate the children's residence, and Gary, as temporary possessory managing conservator, was given supervised access and possession.

On October 26, 2016, the case was set for trial for January 18, 2017. Arlene, her attorney, and Gary's attorney appeared for trial, but Gary did not appear; his attorney informed the trial court that Gary had left for Russia the day before on a business trip. The trial court denied Gary's oral motions for continuance and for recusal, and a bench trial took place with Arlene as the only fact witness.

Arlene testified that Gary presented a danger to the children because he failed to acknowledge that his adult stepson D.S. had been "sleeping" with I.M.M. and that Gary had failed to take reasonable steps to protect I.M.M. from D.S. Arlene stated that I.M.M. was attending counseling and was doing well in school; I.M.M. had been "focused, stable, and happy" since the trial court issued its temporary orders. Arlene testified that the children were now ages fourteen and twelve, that D.S. was still residing with Gary, and that neither of them should have any contact with D.S. She said that the alleged sexual conduct between I.M.M. and D.S. that had occurred for many months was a material and substantial change in

6

circumstances[4] and that she believed that making the temporary orders final was in the best interest of both children.

Under questioning by the amicus attorney, Arlene reiterated that Gary had failed to acknowledge that there was an inappropriate relationship between I.M.M. and D.S. She stated that, since the temporary orders hearing in October, the children's home life had been "pretty serene" and that the children were stable and focused on school. Arlene believed that visitation between the children and Gary should be supervised through the SAFE program.

Weeks later the trial court signed a final order with a finding that there had been a material and substantial change in circumstances since the last order and that modification was in the children's best interest. The final order found that awarding Gary a standard possession order was not in the children's best interest, provided for only supervised visitation by Gary, and ordered him to pay $1,600.00 in monthly child support. On Gary's request, the trial court issued findings of fact and conclusions of law, and this appeal followed. Gary and Arlene had counsel in the trial court, but on appeal both are appearing pro se.

**Analysis**

Asserting twelve issues, Gary argues that this is a "civil rights appeal" raising constitutional issues pertaining to his parental rights. His issues are (1) the

---

[4]    The record contains no direct evidence of an actual sexual relationship.

7

trial court lacked jurisdiction; (2) the trial court erred in not ordering arbitration; (3) the trial court erred in proceeding to trial with a pending motion for recusal; (4) the trial court violated due process in denying a hearing on Gary's constitutional challenges; (5) the trial court violated the Open Courts provision in denying Gary's constitutional claims and a hearing on Gary's constitutional challenges; (6) the trial court erred in acting with "unbridled discretion;" (7) the trial court acted without authority in infringing on Gary's and his children's constitutional rights; (8) the trial court erred in appointing an amicus attorney; (9) the trial court erred in violating Gary's and his children's free exercise of religion; (10) the trial court erred in awarding Arlene child support; (11) the trial court erred in restricting Gary's First Amendment rights; and (12) the trial court erred in conducting trial during a flooding event that prevented his attorney from having his trial evidence. We will address these issues by subject matter.

**Jurisdictional and Procedural Issues**

**Jurisdiction.** In his first issue, Gary contends that the trial court lacked subject-matter jurisdiction. On January 18, 2017, the day of the final trial, Gary filed a multifarious motion asserting, in part, that the trial court lacked "constitutional jurisdiction" because Arlene was seeking relief that violated Gary's many alleged constitutional rights. Before trial started, Gary's attorney informed the trial court that a "plea to the jurisdiction" had just been filed within the last

8

hour, and the trial judge commented that she had "no notice" of it. Under this circumstance, we reject Gary's contention that the trial court erred in failing to address his jurisdictional plea.

Regardless, subject-matter jurisdiction is essential to a court's authority to decide a case, cannot be waived, and may be raised for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–45 (Tex. 1993). We will therefore address Gary's jurisdictional issue.

Gary first argues that because the children lacked standing in the modification suit, the trial court lacked subject-matter jurisdiction. Standing is a component of subject-matter jurisdiction. *Id.* at 444–45. Whether the children had standing is irrelevant; Gary and Arlene had and have standing in this SAPCR suit.[5] *See* TEX. FAM. CODE §§ 102.003(a)(1), 156.002(a, b). Therefore, the trial court had subject-matter jurisdiction. We reject Gary's standing argument.

Gary next argues that it is a jurisdictional prerequisite that the trial court judge be neutral and impartial and that the trial judge "failed to demonstrate the neutrality and impartiality necessary to establish a legitimate trial court." He points to no applicable authority in support of his argument, and we reject it.

Issue one is overruled.

---

[5] In their live petitions, both Gary and Arlene asserted that the 310th District Court had continuing, exclusive jurisdiction of the suit.

**Recusal.** In issue three, Gary asserts that the trial court erred by proceeding to trial after he had filed a motion for recusal.

A motion for recusal must be written and filed with the court clerk. *See* TEX. R. CIV. P. 18a(a)(1) (providing that motion is made "by filing a motion with the clerk of the court in which the case is pending," and it "must be verified"). Also, a motion for recusal "must not be filed after the tenth day before the date set for trial or other hearing unless, before that day, the movant neither knew nor reasonably should have known: (i) that the judge whose recusal is sought would preside at the trial or hearing; or (ii) that the ground stated in the motion existed." TEX. R. CIV. P. 18a(b)(1)(A). "If a motion is filed before evidence has been offered at trial, the respondent judge must take no further action in the case until the motion has been decided, except for good cause stated in writing or on the record." TEX. R. CIV. P. 18a(f)(2)(A). "Unless a written motion is filed, the rules obligating a trial court to refer the motion do not apply." *In re A.V.*, 350 S.W.3d 317, 321 (Tex. App.—San Antonio 2011, no pet.).

Before the January 18, 2017 trial began, Gary's attorney asserted an oral motion for recusal without articulating any grounds. The trial judge responded that a motion for recusal has to be written and that if there was "a written motion for recusal, I would certainly consider it." Arlene's attorney and the amicus attorney

objected to the oral motion for recusal, and the trial court sustained the objection and refused to consider the oral motion for recusal.

Gary's written but unverified motion for recusal was e-filed at 11:38 a.m. on January 18, 2017. Without a supporting citation to the record, Gary asserts in his brief that his written motion for recusal was e-filed before testimony began. The reporter's record for the trial does not state the time that evidence began to be offered; the scheduling order indicates that the trial setting was for 9:00 a.m. on January 18, 2017. Regardless, at no point before, during, or after trial did Gary's attorney notify the trial court that he was having his staff e-file a motion for recusal that day, which reflects a lack of candor. The record also does not reflect that, at any time during the trial, the court clerk notified the trial judge of the filed motion for recusal. *See* TEX. R. CIV. P. 18a(e)(1). On January 25, 2017, Gary filed a supplemental motion for recusal.

Within three business days after the written motion for recusal was filed, the trial judge declined to recuse herself voluntarily and referred the motion to the regional presiding judge. *See* TEX. R. CIV. P. 18a(f)(1). The regional presiding judge denied Gary's motions for recusal on February 3, 2017 and also denied Gary's motion for reconsideration on February 15, 2017. The trial court did not sign the final order being appealed until March 7, 2017, after Gary's motions for recusal had been denied. *See In re Rio Grande Valley Gas Co.*, 987 S.W.2d 167,

11

179 (Tex. App.—Corpus Christi 1999, orig. proceeding) ("Any order other than an order of recusal or referral, entered by a court after a proper motion to recuse is entered is void."). Finding no error by the trial court and that the order being appealed is not void, we overrule issue three.

**Arbitration.** Gary asserts in his second issue that the trial court lacked jurisdiction because it did not order the parties to arbitration.[6] The parties' divorce decree contains a provision requiring mediation of any controversy over the terms and conditions of conservatorship, possession, or support, and if mediation was not agreed to and the controversy could not be directly settled, then binding arbitration of the controversy was required. Arlene filed a motion to compel mediation and arbitration, and the trial court ordered the parties to mediation. Arlene then filed a motion to compel arbitration, asserting that the parties could not agree on a mediator. The record does not reflect a hearing or ruling on Arlene's motion to compel arbitration.

Gary did not file a motion to compel arbitration. Just before trial began, his attorney made only vague references to the arbitration provision and to Arlene's motion, and he did not specifically request that arbitration be compelled. By failing

---

[6]   A trial court does not lack jurisdiction if it fails to order parties to arbitration; Gary does not identify any authority to support his contrary assertion.

12

to move to compel arbitration and to obtain a ruling, Gary has failed to preserve his second issue for appellate review. TEX. R. APP. P. 33.1(a).

**Amicus Attorney.** In issue eight, Gary complains that the trial court violated due process, due course of law, and section 107.021 of the Family Code in appointing an amicus attorney.

At the conclusion of the hearing on Arlene's emergency motion, the associate judge stated that he was going to appoint an amicus attorney. Gary asserts that his attorney objected to an appointment of an amicus attorney at that time, but the record reflects that his attorney did not specifically object to an appointment; his only response in the nature of an objection was to request that someone other than the previous amicus attorney be appointed, and the associate judge did appoint a different amicus attorney.[7] By failing to make a specific objection to the appointment of any amicus attorney at this hearing, Gary failed to preserve the issue for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A) (stating that objection be made "with sufficient specificity to make the trial court aware of the complaint").

---

[7] Gary's attorney stated: "I know the Court's probably going to appoint an amicus. I would prefer there not be because this has - - this is so convoluted. I just want to make sure that we make sure - - there was a previous amicus and we want to make sure it's not the same one." The trial court did not appoint the same amicus attorney.

At the July 22, 2016 hearing on Gary's motion to dissolve the TRO, Gary's attorney objected to the appointment of an amicus attorney, stating that it was an improper invasion of privacy and that Family Code section 107.021 was unconstitutional as applied on the ground that an amicus attorney was unnecessary to protect the children because CPS had already done its investigation. Gary did not, however, seek or obtain a ruling on his objections, and he has therefore failed to preserve these objections for appellate review. *See* TEX. R. APP. P. 33.1(a)(2)(A) (requiring the record to show that trial court ruled on objection). Further, these objections do not comport with the complaints in Gary's eighth issue and are therefore not before us. *See Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 651 (Tex. App.—Dallas 2015, no pet.).

In his August 5, 2016 motion for temporary orders and temporary injunctions, Gary requested the release of the amicus attorney without stating any grounds. This general objection does not preserve error for appellate review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Lege v. Jones*, 919 S.W.2d 870, 874 (Tex. App.—Houston [14th Dist.] 1996, no writ).

And in his August 9, 2016 response to Arlene's emergency motion, Gary requested a "declaratory statement" that any appointment of an amicus attorney "must meet 4th and 14th Amendment fundamental rights requirements," alleged that Arlene requested the appointment of an amicus attorney "to conduct unlawful

14

and warrantless additional investigations," and requested that the trial court dissolve the order appointing the amicus attorney and dismiss the amicus attorney because he is presumed fit and the appointment of an amicus attorney is an unreasonable seizure of his money to pay for an amicus attorney and places an undue burden on the parent-child relationship. Gary did not, however, obtain a ruling on his objections, and he has therefore failed to preserve these objections for appellate review. *See* TEX. R. APP. P. 33.1(a)(2)(A) (requiring the record to show that trial court ruled on objection). Further, these objections do not comport with Gary's eighth issue and are therefore not before us.

Gary's eighth issue asserts that the trial court's appointment of an amicus attorney violated due process and due course of law. These arguments were not raised in the trial court, and constitutional complaints cannot be raised for the first time on appeal. *See In re K.A.F.*, 160 S.W.3d 923, 928 (Tex. 2005); *In re C.M.J.*, — S.W.3d —, — n.1, 2019 WL 1029305, at *4, n.1 (Tex. App.—Houston [1st Dist.] Mar. 5, 2019, no pet. h.).

In a July 20, 2016 multifarious motion entitled "Petitioner's Emergency Motion to Dissolve the Temporary Restraining Order and for a New Temporary Restraining Order and Request for Emergency Hearing for Temporary Orders," Gary requested that the amicus attorney be discharged solely because of the

15

unnecessary expense and undue financial burden on him. After a hearing, the trial court denied the motion. Gary has preserved this issue for appellate review.

Section 107.021 is entitled "Discretionary Appointments" and provides that in a SAPCR suit in which the best interests of a child are at issue, the court "may appoint" an amicus attorney. TEX. FAM. CODE § 107.021(a); *In re R.H.W. III*, 542 S.W.3d 724, 743 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (section 107.021 authorizes "discretionary appointment" of amicus attorney in SAPCR suit involving best interests of a child). The Family Code defines an amicus attorney as "an attorney appointed by the court in a suit, other than a suit filed by a governmental entity, whose role is to provide legal services necessary to assist the court in protecting a child's best interests rather than to provide legal services to the child." TEX. FAM. CODE § 107.001(1); *see In re McDaniel*, 408 S.W.3d 389, 399 n.2 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding) ("the amicus attorney's role is limited by statute to assisting the trial court with protecting the best interests of the child"). An amicus attorney appointed under Chapter 107 does not represent the child or either parent. *See* TEX. FAM. CODE § 107.001(1); *Zeifman v. Nowlin*, 322 S.W.3d 804, 808–09 (Tex. App.—Austin 2010, no pet.) (citing *O'Connor v. O'Connor*, 245 S.W.3d 511, 515 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "The amicus attorney is appointed specifically to assist the court." *O'Connor*, 245 S.W.3d at 515; *see McDaniel*, 408 S.W.3d at 399 n.2. The

Family Code describes the many duties of an amicus attorney. *See id.* §§ 107.003, 107.005. Those duties include interviewing the parties and participating in the litigation to the same extent as an attorney for a party. *Id.* § 107.003(a)(1)(A)(iii), (F).

We review a trial court's appointment of an amicus attorney or its denial of a motion to remove an amicus attorney for an abuse of discretion. *Cf. In re Scheller*, 325 S.W.3d 640, 644–45 (Tex. 2010) (orig. proceeding) (reviewing appointment of guardian ad litem under section 107.021 for abuse of discretion); *Gonzalez v. Gonzalez*, 26 S.W.3d 657, 658 (Tex. App.—San Antonio 2000, no pet.) (reviewing denial of motion to remove appointed attorney ad litem under chapter 107 for abuse of discretion).

The court is not required to conduct a hearing before appointing an amicus attorney. *Cf. Gonzalez*, 26 S.W.3d at 658. In determining whether to appoint an amicus attorney, the trial court "shall (A) give due consideration to the ability of the parties to pay reasonable fees to the appointee; and (B) balance the child's interests against the cost to the parties that would result from an appointment by taking into consideration the cost of available alternatives for resolving issues without making an appointment; . . ." TEX. FAM. CODE § 107.021(b)(1).

It is undisputed that one of the issues addressed in this modification suit involved the children's best interests. The associate judge appointed the amicus

attorney soon after the hearing on Arlene's emergency motion, and in that hearing, the parties' counsel informed the associate judge that each parent's annual income was over $200,000. Based on these factors, we cannot say that the court abused its discretion in appointing the amicus attorney.

For the above reasons, we overrule issue eight.

**Constitutional Issues**

**Pretrial hearing on constitutional challenges.** In issue four, Gary asserts that the trial court violated due process and due course of law by denying him a hearing on his constitutional challenges to various Family Code provisions and judicial actions. His brief further asserts that Arlene's pleadings are deficient.

Before the trial began, Gary's attorney made numerous constitutional objections to the proceeding, and the trial court overruled those objections. To the extent that issue four is premised on the denial of a hearing on those objections, we overrule it because the trial court heard and ruled on those objections.

Gary had previously filed two motions requesting the trial court to rule on his "equal protection rights at issue" and on "what process" was due him given his various alleged constitutional rights at issue in the case and seeking declaratory relief thereon. Gary does not point to anywhere in the record where either he requested a hearing on these motions and his request was denied or he objected to the trial court's refusal to hear his motions upon a proper request. Gary has

therefore failed to preserve this aspect of his fourth issue for appellate review. TEX. R. APP. P. 33.1(a); *see id.* 33.1(a)(2)(B) (requiring the record to show that trial court "refused to rule on the request, objection, or motion, and the complaining party objected to the refusal").

Within issue four, Gary also contends that Arlene's pleadings failed to provide notice of the allegations that resulted in the trial court's final order. "The purpose of pleadings is to define the issues at trial." *Garvey v. Vawter*, 795 S.W.2d 741, 742 (Tex. 1990). A pleading is sufficient if it gives the opposing party adequate information to enable him to prepare a defense. *Roark v. Allen*, 633 S.W.2d 804, 800 (Tex. 1982).

This modification suit began with Gary filing a petition to modify that sought to enjoin Arlene from discussing educational decisions with the children and requested a judicial determination on whether Arlene was a risk for the international abduction of the children. Arlene filed a counter-petition seeking, among other things, the joint right to make educational decisions, permission to travel with the children internationally during her periods of possession, authority to select a counselor or therapist for the children, and a decrease in child support. Thereafter, Arlene filed her emergency motion and supporting affidavit, and the parties went through hearings on the emergency motion and Gary's motion to

dissolve and temporary orders hearings before the associate judge and then the district judge.

Additionally, the amicus attorney filed an answer that raised Gary's parental fitness by requesting the trial court to determine what would be in the children's best interest, including the emotional and physical needs of the children now and in the future; the emotional and physical danger to the children now and in the future; the parenting ability of each person seeking managing conservatorship of the children; the stability of the home of each person seeking managing conservatorship of the children and any excuse for the acts or omissions of each person seeking managing conservatorship of the children. The amicus attorney also filed a response to Gary's request for a de novo hearing on the temporary orders and detailed the allegations pertaining to Gary's handling of the relationship between I.M.M. and D.S.

The amicus attorney's pleadings, Arlene's emergency motion, the temporary orders hearings, and the temporary orders all gave Gary sufficient notice of the allegations and the matters to be tried at the final trial of this modification suit. *See In re A.D.*, 474 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (holding that trial court did not err in granting relief not requested in original petition where allegations in petitioner's affidavits and other documents filed with trial court, together with trial court's temporary orders granting complained-of

20

relief, "provided fair notice" to opposing party). Furthermore, there is a "diminished significance of technical pleading rules" in modification suits where the principal concern is the children's best interest, *King v. Lyons*, 457 S.W.3d 122, 129–30 (Tex. App.—Houston [1st Dist.] 2014, no pet.), and the trial court has discretion to place conditions on matters of possession even when the pleadings do not request such conditions. *In re W.B.B.*, No. 05-17-00384-CV, 2018 WL 3434588, at *6 (Tex. App.—Dallas July 17, 2018, no pet.) (mem. op.); *MacCallum v. MacCallum*, 801 S.W.2d 579, 586 (Tex. App.—Corpus Christi 1990, writ denied) ("Pleadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings.").

Last, we conclude that, because Gary never timely objected to Arlene's alleged pleading deficiency and because of his and his attorney's active participation in all of the hearings and the final trial, the issues of conservatorship and possession based on the allegations of abuse and neglect were tried by consent. *See King*, 457 S.W.3d at 127 ("'A party's unpleaded issue may be deemed tried by consent when evidence on the issue is developed under circumstances indicating both parties understood the issue was in the case, and the other party failed to make an appropriate complaint.'") (quoting *Case Corp. v. Hi-Class Bus. Sys. of Am.,*

*Inc.*, 184 S.W.3d 760, 771 (Tex. App.—Dallas 2005, pet. denied)); *Guillory v. Boykins*, 442 S.W.3d 682, 690–91 (Tex. App.—Houston [1st Dist.] 2014, no pet.). We reject Gary's pleadings-insufficiency argument.

For the above reasons, we overrule issue four.[8]

**Open Courts.** In issue five, Gary asserts that the trial court erred in denying him access to the courts by denying his constitutional claims and his claims for declaratory relief. The heading in Gary's brief is entitled "Open Courts Provision."[9] He states that he filed three (he actually filed four) motions for declaratory relief seeking declarations on due process regarding the substantive

---

[8]    In his surreply brief, Gary, citing Family Code subsection 102.008(b)(10), asserts that Arlene's alleged pleading deficiency deprived the trial court of jurisdiction. That subsection requires a petition to include "a statement describing what action the court is requested to take concerning the child and the statutory grounds on which the request is made." Gary does not point to any authority that this subsection is jurisdictional, and we disagree that it is jurisdictional.

[9]    The Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law, . . ." TEX. CONST. art. I, § 13. The Open Courts provision affords three distinct protections: (1) the courts must be open and operating; (2) citizens must have access to those courts unimpeded by unreasonable financial barriers; and (3) meaningful legal remedies must be afforded to citizens. *Alpine Indus., Inc. v. Whitlock*, 554 S.W.3d 174, 181 (Tex. App.—Fort Worth 2018, pet. filed) (citing *Tex. Ass'n. of Bus.*, 852 S.W.2d at 448); *Cronen v. Ray*, No. 14-05-00788-CV, 2006 WL 2547989, at *5 (Tex. App.—Houston [14th Dist.] Sept. 5, 2006, pet. denied) (mem. op.). To claim an Open Court's violation, a party must raise a fact issue establishing that he did not have a reasonable opportunity to be heard. *Stockton v. Offenbach*, 336 S.W.3d 610, 618 (Tex. 2011).

22

and procedural rights at issue and on the equal protection rights at issue. He then contends that the trial court committed error because it "summarily dismissed the motions without reaching the merits."

As we noted above, for Gary's first two motions for declaratory relief, he did not point to anywhere in the record where either he requested a hearing on these motions and his request was denied or he objected to the trial court's refusal to hear his motions upon a proper request. He therefore failed to preserve his complaint for appellate review. The same is the case for his other two motions for declaratory relief. *See* TEX. R. APP. P. 33.1(a), 33.1(a)(2)(B). Also, Gary's brief lacks citations to the record to support his various assertions that the trial court dismissed or denied his motions for declaratory relief, and his brief lacks citations to authorities and an appropriate legal argument on his Open Courts claim. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). The only cited authority on Gary's Open Courts claim is the Open Courts provision itself.

Because Gary failed to preserve his complaints for appellate review, and because he has inadequately briefed his Open Courts claim, we conclude that issue five is waived. *See Dauz v. Valdez*, — S.W.3d —, —, 2018 WL 4129826, at *5 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, no pet.); *Izen v. Comm'n for*

23

*Lawyer Discipline*, 322 S.W.3d 308, 321–22 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

**"Unbridled discretion."** Gary's sixth issue asserts: "The trial court errs where it presumes broad authority to infringe fundamental First Amendment rights based on nothing more than the trial court's own opinion without conducting an adjudication of rights, without protecting substantive rights, without providing fair proceedings, and as an act of unbridled discretion."

As we have noted, an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Gary's brief on this issue fails to meet this requirement. It does not identify a trial-court ruling that he complains of, and it lacks any citations to the record. And to the extent that we can ascertain a complaint, it appears to be that the Family Code provisions applicable to modification suits are unconstitutional because of the best-interest-of-the-child standard and the trial court's discretion in adjudicating such suits. The appellant's brief does not point to any specific Family Code provisions and is therefore inadequate. Gary's reply brief does include a citation to section 153.002 of the Family Code,[10] but it then entirely fails to engage the legal analysis that would be

---

[10] Section 153.002 provides that the "best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Gary's briefs

24

required to determine whether the statute is unconstitutional.[11] Because issue six is

inadequately briefed, we conclude that it is waived.

omit any discussion of the Texas cases that have found this statute, the modification statute, and similar orders to be constitutional. *See In re J.R.D.*, 169 S.W.3d 740, 744 (Tex. App.—Austin 2005, pet. denied) (holding best-interest statute to be constitutional); *In re M.N.G.*, 113 S.W.3d 27, 33–35 (Tex. App.—Fort Worth 2003, no pet.) (holding that modification statute was not too vague or overbroad to violate parent's due-process rights); *In re R.D.Y.*, 51 S.W.3d 314, 324 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (holding that order limiting mother's access and possession did not violate her constitutional rights to due process and equal protection). Indeed, the Austin Court noted that "the Supreme Court has expressly recognized that the "best interest of the children" is the proper standard for resolving disputes between parents on custody issues. *Reno v. Flores*, 507 U.S. 292, 303–04 [] (1992)." *J.R.D.*, 169 S.W.3d at 744; *see also Palmore v. Sidoti*, 466 U.S. 429, 433 (1984) ("In common with most states, Florida law mandates that custody determinations be made in the best interests of the children involved. The goal of granting custody based on the best interests of the child is indisputably a substantial governmental interest for purposes of the Equal Protection Clause.") (citation omitted).

[11]  Gary's three briefs (his opening brief, reply brief, and surreply brief) cite and discuss only one Texas case on this issue, and in doing so, misstate that case. Gary argues that *Grigsby v. Coker*, 904 S.W.2d 619 (Tex. 1995) (orig. proceeding) stands for the proposition that a trial court's "viewpoint regarding the best interest of a child is insufficient justification to infringe fundamental rights." It does not. *Grigsby* involved a trial court's gag order that prevented the parents from communicating about each other in a derogatory manner and that was entered without formal motion, notice, and evidentiary hearing. *Id.* at 620–21. The supreme court held that the order was overly broad and that, over one parent's argument that procedural protections of notice and a hearing are dispensable in family cases, notice, a hearing, and specific findings are required to issue a gag order in family cases before imposing a prior restraint on speech. *Id.* (citing *Davenport v. Garcia*, 834 S.W.2d 4, 9 (Tex. 1992)). The court noted that, while a trial court in a family case has "broad powers," it is not authorized "to invade

**Constitutional Guarantees.** In his seventh issue, Gary asserts that the trial court did not have authority to infringe his and his children's constitutional rights. His brief, however, is an unfocused discussion of various constitutional rights without citations to the record, and it then recycles the same arguments made in issues four, five, and six on the trial court's alleged denial or refusal to address his declaratory-judgment motions:

> Gary sought pre-trial answers to outstanding questions of law essential to establishing procedural and substantive rules of due process and was denied. Due process is violated where essential questions of law are raised but go unanswered and asks this court to answer these essential questions of law as a pre-requisite for determining whether TC [trial court] violated Gary's or the children's rights.
>
> . . . .
>
> [I]t is error to presume judicial authority to infringe constitutional rights without affording a hearing to challenge that authority, even presuming rational basis review.
>
> . . . .
>
> [Trial court] errs in denying substantive rights analysis, substantive due process/course rights analysis, procedural due process/course rights analysis, and equal protection rights analysis prior to trial, as requested in the declaratory motions.

As discussed above on issues four, five, and six, Gary has failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a), 33.1(a)(2)(B).

---

constitutional guarantees," but it "could have adopted an order which complied with *Davenport*, but it failed to do so." *Id.* at 621.

**First Amendment rights.** Because issues nine and eleven are related, we address them together. Issue nine asserts:

> The trial court erred when it substantially burdened [Gary's] right and duty to prepare his children for "additional obligations" which includes "inculcation of religious beliefs", where it denied the association rights necessary for religious communication, where it contracted the realm of religious instruction available to the children, and where it prevented Gary and children from worshiping together as a family.

Issue eleven asserts:

> The trial court erred by issuing custody and possession orders that limit the time, place, and manner of protected speech, worship, and association between Gary and his children as content-based restrictions where the trial court justified the restrictions based on a difference of opinion between the judge and Gary regarding belief of what is in the children's best interests.

These two issues generally contend that the trial court's final order infringes on Gary's and the children's asserted First Amendment rights.[12] As we have already noted several times, to preserve these issues for appellate review, Gary was required to make his constitutional challenges in the trial court and either obtain a ruling or object to the trial court's refusal to rule. *See* TEX. R. APP. P. 33.1(a), 33.1(a)(2)(B). None of Gary's several briefs point to where in the voluminous

---

[12]    The Family Code provides: "The terms of an order that denies possession of a child to a parent or imposes restrictions or limitations on a parent's right to possession of or access to a child may not exceed those that are required to protect the best interest of the child." TEX. FAM. CODE § 153.193. It also provides: "The court may limit the rights and duties of a parent appointed as a conservator if the court makes a written finding that the limitation is in the best interest of the child." *Id.* § 153.072.

record he preserved these issues for appellate review, and constitutional complaints may not be raised for the first time on appeal. *K.A.F.*, 160 S.W.3d at 928; *C.M.J.*, — S.W.3d at — n.1, 2019 WL 1029305, at *4, n.1.

Within issue nine, Gary asserts as a "defense" section 110.004 of chapter 110 of the Civil Practice and Remedies Code, known as the Texas Religious Freedom Restoration Act (TRFRA).[13] *See Barr v. City of Sinton*, 295 S.W.3d 287, 289 (Tex. 2009). Section 110.004 provides: "A person whose free exercise of religion has been substantially burdened in violation of Section 110.003 may assert that violation as a defense in a judicial or administrative proceeding without regard to whether the proceeding is brought in the name of the state or by any other person." TEX. CIV. PRAC. & REM. CODE § 110.004.

In an undated notice letter (filed on January 30, 2017) sent under section 110.006 to the trial court judge, Gary asserted that the trial court's Temporary Orders substantially burdened his free exercise of religion with his children.[14] The trial court responded with a March 14, 2017 order that required the parties (1) to meet and confer in person toward reaching an agreement that addressed the

---

[13]   He also again asserts that the trial court acted "in excess" of Arlene's pleadings, but we overruled that complaint in our discussion of issue four.

[14]   Gary eventually sued the trial court judge under TRFRA, and this court held that the trial court in that case properly dismissed the suit because of judicial immunity. *See Machetta v. Millard*, No. 01-17-00857, 2018 WL 5289336, at *2 (Tex. App.—Houston [1st Dist.] Oct. 25, 2018, pet. denied) (mem. op.).

concerns in Gary's letter, (2) to inform the court of any specific areas of disagreement and whether mediation would be useful, (3) to file a summary setting out their compliance with the order and to file any motions addressing alternative methods to reach an agreement, and (4) to notify the court if they could not reach any agreement, after which the court would set the matter for hearing. The order concluded by stating that the court may subsequently enter an order fashioning a remedy to address the concerns in Gary's letter if supported by applicable precedent and the evidence and argument presented at the hearing.

We conclude that Gary has failed to preserve his TRFRA defense for appellate review. First, his briefs contain no citations to the record where he complied with the trial court's March 14, 2017 order, and we therefore presume that he did not comply. *See Castille v. Serv. Datsun, Inc.*, No. 01-16-00082-CV, 2017 WL 3910918, at *13 (Tex. App.—Houston [1st Dist.] Sept. 7, 2017, no pet.) (mem. op.) (stating that appellate court has no duty or right to perform independent review of record to determine whether there was error). He therefore presents nothing for us to review, and he may not present his TRFRA defense for the first time on appeal.

To the extent that Gary purports to challenge the sufficiency of the evidence supporting the trial court's finding (No. 15(d)) that Gary "failed to take steps to protect the safety and welfare of the child once the outcry was made," which he

mentions in two sentences within issue eleven, Gary has failed to adequately brief the issue. His brief does not assign the sufficiency of the evidence as an issue presented for review, it does not discuss the standard of review for sufficiency of the evidence with citation to authorities, and it does not address all of the relevant evidence in the reporter's record with record citations.[15] *See* TEX. R. APP. P. 38.1(f), (g), (i).

For the above reasons, we overrule issues nine and eleven.

---

[15] If we were to address Gary's sufficiency complaint, we would find that the trial court did not abuse its discretion in its finding. *See Trammell v. Trammell*, 485 S.W.3d 571, 575 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Arlene testified that Gary presented a danger to the children because he failed to acknowledge that D.S. had been "sleeping" with I.M.M. and that he had failed to take reasonable steps to protect I.M.M. from D.S. Arlene testified that the children were now ages fourteen and twelve, that D.S. was still residing with Gary, and that neither of them should have any contact with D.S. She said that the sexual conduct between I.M.M. and D.S. that had occurred for many months was a material and substantial change in circumstances and that she believed that making the temporary orders final was in the best interests of both children. Additionally, because Gary has not challenged finding 19, it is binding. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986). That finding states:

> Sufficient evidence, including evidence supporting the above findings, supports imposition of limitations and restrictions upon Petitioner's periods of possession and access with the children. The terms and provisions for supervised access by Petitioner with the children as contained in the final judgment are in the best interest of the children and represent the minimum orders which are required to protect the best interest of the children.

**Unbriefed issues.** Issue ten, which alleges insufficient evidence to support the award of child support to Arlene, and issue twelve, which asserts error by the trial court in conducting the trial during alleged flooding that prevented Gary's attorney from having his "evidence files" at trial, are unbriefed. These issues are therefore waived. TEX. R. APP. P. 38.1(i); *Dauz*, — S.W.3d at —, 2018 WL 4129826, at *5; *Izen*, 322 S.W.3d at 321–22.

## Conclusion

We affirm the judgment of the trial court. All pending motions are dismissed as moot.


Richard Hightower
Justice


Panel consists of Justices Lloyd, Kelly, and Hightower.